T.C. Memo. 2014-80

UNITED STATES TAX COURT

MICHAEL H. BOULWARE, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23525-12L.                    Filed May 6, 2014.

<u>Jonathan H. Steiner</u>, for petitioner.

<u>D. Anthony Abernathy</u> and <u>Peter R. Hochman</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  This case is before the Court for review of a notice of

determination sustaining the issuance of a notice of intent to levy to collect

[*2] petitioner's unpaid Federal income tax for 1998, 1999, 2001, and 2002 (years at issue). We review respondent's determination pursuant to section 6330(d)(1).[1]

The parties submitted this case to the Court fully stipulated for decision without trial under Rule 122. The issues before us are:

(1) whether respondent abused his discretion in denying petitioner's request for an installment agreement relating to the years at issue. We hold he did not; and

(2) whether respondent abused his discretion in denying petitioner's request for a face-to-face hearing. We hold he did not.

Petitioner was a resident of Hawaii when he petitioned this Court.

## Background

1. Deficiency Case and Appeal

Petitioner is the president and 100% shareholder of Hawaiian Isle Enterprises, Inc., and HIE Holdings, Inc. Petitioner's income tax liabilities for the years at issue are based upon an opinion rendered by this Court on June 8, 2009, in HIE Holdings, Inc. v. Commissioner, T.C. Memo. 2009-130 (deficiency case), affirmed by the Court of Appeals for the Ninth Circuit on April 5, 2013, 521 Fed.

---

[1]All section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** Appx. 602 (9th Cir. 2013).[2]  On May 20, 2013, petitioner filed a petition for a rehearing and a rehearing en banc by the Court of Appeals for the Ninth Circuit, which the court denied on July 29, 2013.  On October 28, 2013, petitioner petitioned the Supreme Court of the United States for a writ of certiorari, which the Supreme Court denied on December 2, 2013.  HIE Holdings Inc. v. Commissioner, 571 U.S. ___, 134 S. Ct. 712 (2013).

Following this Court's entry of decision in the deficiency case, on July 19, 2010, petitioner moved to waive the section 7485 bond requirement to stay assessment and collection pending appeal or to set the bond at the lowest amount possible.  In an order dated August 9, 2010, we declined to waive the bond requirement, stating:

> As mentioned above, the posting of a bond is not a requirement to an appeal of our decisions.  Instead, the posting of the bond serves to guarantee that the Commissioner will be able to collect the deficiencies determined by this Court (plus interest) and to preclude the Commissioner otherwise from assessing and collecting those amounts before the appellate review is complete.  Absent petitioners' posting of a bond fixed at our customary amount, we consider it to be inappropriate in the setting at hand to preclude the Commissioner, if he desires, from assessing and collecting those deficiencies (plus interest) during the pendency of petitioners' appeal.  Such an appeal, which would first go to the Court of Appeals for the Ninth Circuit and then most likely to the U.S. Supreme Court, could easily last more

---

[2]Petitioner's deficiencies for the years at issue are $264,868 for 1998, $589,740 for 1999, $740,405 for 2001, and $395,755 for 2002.

**[\*4]** than 2 years. To the extent that the Government during the pendency of the appeal lacked a lien as to the full amount of the deficiencies that we determined (plus interest), the Government will stand simply as an unsecured creditor that remains vulnerable to petitioners' dissipation of their assets.

We understand that the posting of the bond entails privation and perhaps some suffering, and we have empathy for petitioners' situation. Yet, the purpose of the bond is to protect the Government when and if it is necessary to collect the deficiencies and interest due by virtue of our decisions. In this regard, we take note of the fact that Michael Boulware hid millions of dollars of assets from the Government and from others in the context of these cases and that he participated in other deceptive behavior, some of which led to his criminal conviction. Given Michael Boulware's conduct, the need to protect the Government with a full bond is self-evident. * * *

In the same order we set the amount of the bond in accordance with our customary practice for appeal bonds, quoting Barnes Theatre Ticket Serv., Inc. v. Commissioner, 50 T.C. 28, 29 (1968), as follows:

The customary practice of the Tax Court is to fix an appeal bond equal to the amount of the deficiency for which review is sought, plus any additions to the tax and interest running from the time of the filing of the return until the time when the appellate review of the decision is expected to be completed--ordinarily 2 ½ years after the last date on which a petition for review could be filed; but of course, the amount of the bond cannot exceed twice the deficiency. * * *

On August 19, 2010, petitioner appealed the deficiency case to the Court of Appeals for the Ninth Circuit but did not post a bond pending appeal. On appeal

[*5] petitioner moved the Court of Appeals for the Ninth Circuit for a stay of collection pending appeal, which the court denied on March 11, 2011.

2.      IRS Collection Action

On February 24, 2011, respondent sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 informing him that a notice of Federal tax lien (NFTL) would be recorded with respect to his income tax liabilities for the years at issue.  The letter further informed petitioner of his right to a collection due process (CDP) hearing and that he had until April 4, 2011, to request such a hearing.  On February 25, 2011, respondent recorded an NFTL with respect to petitioner's income tax liabilities for the years at issue.[3]

On or about February 28, 2011, petitioner submitted a Form 2848, Power of Attorney and Declaration of Representative, designating Jonathan H. Steiner, Alan E. Kobayashi, and Jon M. Yasuda as his representatives for taxable years 1998 through 2004.

On May 18, 2011, respondent sent petitioner a Letter 1058, Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing, with respect to petitioner's income tax liabilities for the years at issue.  The letter further informed

---

[3]At that time, petitioner's unpaid balances for the years at issue were $439,971.16 for 1998, $977,521.35 for 1999, $1,159,597.56 for 2001, and $605,653.35 for 2002.

[*6] petitioner of his right to request a CDP hearing under section 6330 within 30 days of the letter's date.

On June 14, 2011, petitioner submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, with respect to his tax liabilities for the years at issue. On the form petitioner selected two checkboxes marked "Filed Notice of Federal Tax Lien" and "Proposed Levy or Actual Levy" as the basis for his hearing request. In an attachment to the Form 12153 petitioner stated his belief that a lien withdrawal was warranted because:

> 1. In addition to the years 1998, 1999, 2001 & 2002 MHB [Michael H. Boulware] has received tax assessments for the years 2003 & 2004 and is currently working with Gary Lipetzky (Honolulu IRS Appeals) to resolve unagreed issues.
>
> 2. MHB has also appealed the decision of the Tax Court that resulted in taxes due for the years 1998, 1999, 2001 & 2002. MHB contends that the filing of those liens were premature and should have occurred after the appeals process has run its course. It is our belief that the amount of taxes that the IRS has assessed may not be correct.

Finally, petitioner requested on his Form 12153 a face-to-face meeting.

On or about May 26, 2011, petitioner submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, in which he disclosed his monthly income and expenses as well as his personal assets. In

[*7] this Form 433-A petitioner disclosed monthly wage income of $33,000, monthly rental income of $9,500, and monthly living expenses of $27,033.

On June 22, 2011, Revenue Officer Colin P. Kelly (RO Kelly) prepared a monthly income and expense analysis for petitioner. On the basis of petitioner's 2010 tax return, which disclosed monthly rental income of $13,673, RO Kelly increased petitioner's monthly rental income to $13,000, for a total monthly income of $46,000. In addition, RO Kelly determined that only $16,372 of petitioner's claimed monthly living expenses constituted allowable expenses. Accordingly, RO Kelly determined petitioner's monthly ability to pay to be $29,628. With regard to petitioner's equity in assets, RO Kelly noted that petitioner had a section 401(k) plan account with $990,000 of equity and life insurance policies (with policy numbers ending in 1286 and 2912) with cash value of $53,400.

On or around June 27, 2011, petitioner's case was transferred to respondent's Seattle Appeals Office. On or around August 1, 2011, petitioner's case was again transferred to respondent's Portland Appeals Office. In a letter dated August 19, 2011, respondent informed petitioner that his case had been received for consideration by the Portland Appeals Office.

On February 13, 2012, Settlement Officer Kimberly A. Martin (SO Martin) sent petitioner a letter informing him that a telephone conference had been

[*8] scheduled for March 13, 2012, and that this conference would be his primary

opportunity to discuss his reasons for disagreement with the collection action or to

discuss collection alternatives. This letter further informed petitioner that his CDP

hearing request regarding the proposed levy action was timely but his CDP hearing

request regarding the NFTL was not. Nonetheless, SO Martin informed petitioner

that she would offer him an equivalent hearing with respect to the NFTL but he

could not challenge her equivalent hearing determination. In her letter SO Martin

further informed petitioner:

> You are not able to dispute the liability because the tax liability that is
> the subject of this hearing is based on a judicial decision and although
> you have appealed this decision to the Ninth Circuit Court of Appeals
> the Service is not required to withhold collection absence [sic] the
> posting of a bond which was not done. In addition, the Ninth Circuit
> ruled in case number 10-72589 in order dated 3/11/2011 that your
> motion to stay collection was denied. Your request to have the
> Collection Due Process hearing postponed pending the outcome of
> your appeal cannot be granted.

With regard to the possibility of a collection alternative, SO Martin informed

petitioner:

> Appeals cannot approve an installment agreement or accept an offer-
> in-compromise unless all required estimated tax payments for the
> current year's income tax liability have been made. If you wish to
> pursue one of these alternatives during the CDP hearing process, you
> must arrange for the payment of any required estimated tax payments.
> Delinquent estimated tax payments can be included in an installment
> agreement. However, the estimated tax payments must be paid in full

[*9] <u>before an offer-in-compromise can be accepted.</u>  Our records indicate that you have not made estimated tax payments for the following period(s):  <u>2011</u>.

Finally, SO Martin gave petitioner a list of financial documents that he had to provide before she could consider any collection alternative.

On February 27, 2012, petitioner sent SO Martin a letter asking for a face-to-face hearing.  On February 28, 2012, SO Martin replied to petitioner, stating:

> You[r] request for a face to face conference can be discussed once you have provided the information in my 2/13/2012 letter and we have held the telephone conference.  There is currently not a Settlement Officer located in Hawaii to hold a face to face conference.

On the same day petitioner responded to SO Martin requesting a continuance of the March 13, 2012, conference call.  Petitioner requested that the conference call be rescheduled for after April 15, 2012, since Mr. Kobayashi, his primary certified public accountant, would be busy until after the tax return filing deadline.  Petitioner further explained that his controller was still in the process of gathering the information SO Martin had requested and that his opening brief on appeal before the Court of Appeals for the Ninth Circuit had only recently been submitted.

On February 29, 2012, SO Martin informed petitioner that she had rescheduled the conference call to April 19, 2012, and that she had extended the

[*10] due date for the requested financial documents to March 30, 2012. With regard to petitioner's face-to-face hearing request, she stated:

> As for the face to face hearing request we can discuss that during our telephone conference. If after the telephone conference(s) you still are requesting a face to face hearing we can discuss various possibilities. The travel budget and if we have other cases requiring face to face meetings in Hawaii during that time are factors we consider. Sometimes in these situations we can arrange to have you meet with a local Appeals Officer and I could participate on the telephone. We can explore various options if needed.

On March 30, 2012, petitioner sent SO Martin the requested financial documents, including an updated Form 433-A. In this Form 433-A petitioner disclosed monthly wage income of $33,000, monthly rental income of $9,500, and monthly living expenses of $19,933. Petitioner further disclosed that his section 401(k) plan account had a current value of $900,000 and his life insurance policies (with policy numbers ending in 1286 and 2912) had cash value of $52,437. Finally, petitioner's financial documents included a life insurance policy (with policy number ending in 5184), which was assigned to and had the beneficiary designated as First Interstate Bank.

On the basis of various rental agreements SO Martin determined that petitioner owned a 60-year leasehold interest in 2864 Mokumoa St., Honolulu, Hawaii, for $17,000 a month, which he in turn subleased to HIE Holdings, Inc., for

[*11] $32,533 a month. However, because petitioner paid real estate and general excise taxes for the rental property, SO Martin increased petitioner's monthly rental income to only $13,673, as disclosed in his 2010 return. Accordingly, SO Martin determined petitioner's total monthly income to be $46,673. Using local and national standards SO Martin further determined petitioner's allowable monthly expenses to be $17,341. SO Martin thus concluded that petitioner had the ability to pay $29,332 a month in an installment agreement.

On April 3, 2012, petitioner again requested a continuance of the telephone conference. Petitioner explained that on March 29, 2012, he had received an order from the Court of Appeals for the Ninth Circuit directing him to submit certain briefing by April 19, 2012. Petitioner requested that the conference call be rescheduled to April 26 or 27, 2012. On April 10, 2012, SO Martin replied to petitioner, agreeing to reschedule the conference to May 2, 2012.

On May 2, 2012, SO Martin conducted the telephone conference. During the conference petitioner stated that he might still request a face-to-face hearing. In response SO Martin explained that they would discuss petitioner's financial information first and then decide whether a face-to-face hearing was still necessary or desirable. With regard to an installment agreement, SO Martin stated that it could cover only the years at issue--it could not cover tax years 2003 and 2004

[*12] because they were the subject of a pending Tax Court case, nor could it cover tax years 1989 through 1997 because the returns for those years were still under audit. SO Martin further informed petitioner that he had to be in full compliance with his current tax obligations to qualify for a collection alternative. Therefore, SO Martin advised petitioner that he needed to make his 2011 estimated tax payments before she would consider an installment agreement.

SO Martin also advised petitioner that he had to liquidate his equity in certain assets before she would consider an installment agreement. These assets included petitioner's section 401(k) plan account worth approximately $900,000, from which he could make withdrawals penalty free, and his life insurance policies worth approximately $52,437. Finally SO Martin informed petitioner that she had determined his ability to pay to be approximately $29,000 per month.

On May 18, 2012, petitioner sent SO Martin a letter proposing a $12,500-per-month installment agreement, which would cover tax years 1989, 1990, 1991, 1992, 2003, and 2004, in addition to the years at issue. With regard to the liquidation of assets, petitioner stated:

> As you are aware, the tax liability in this matter remains subject to dispute, and the Tax Court deficiency determination is currently on appeal before the Ninth Circuit. Mr. Boulware does not want to liquidate the 401K and life insurance policy (incurring taxes and creating other hardships) unless and until said liability becomes final.

**[\*13]** Mr. Boulware would therefore propose that a collateral agreement be entered into with the IRS, under which Mr. Boulware agrees to voluntarily liquidate and pay to the IRS these assets within 45 days of the exhaustion of all appeal rights on the Tax Court decision.

The letter further advised SO Martin as follows:

In addition, the Companies plan to take steps to decrease Mr. Boulware's officer loan account balance. As you are aware, the Companies are currently paying Boulware rent on the property located at 1864 Mokumoa Street. Going forward, the Company plans to instead credit payment of such rent against Mr. Boulware's officer loan account. This will decrease Boulware's monthly income (to just his wages of $33,000 per month), but will free up additional funds for the Companies, which will be available for payment of the Companies tax liabilities.

* * * Please note that Mr. Boulware is currently involved in negotiation and possible litigation of alleged tax deficiencies from other years, and that he will continue to incur attorneys' and professional fees and costs related to those proceedings, which expenses are not reflected on Mr. Boulware's Form 433-A. He may also face significant State taxes.

On June 28, 2012, SO Martin responded regarding petitioner's proposed installment agreement. With regard to the scope of the installment agreement, SO Martin advised petitioner as follows:

[Y]our request to include tax periods that are not assessed into an installment agreement cannot be granted. You have petitioned the Tax Court on the Statutory Notice of Deficiency for the 2003 and 2004 tax years and the 89, 90, 91 and 92 tax years are still in the examination stage of the audit process.

[*14] With regard to proposed monthly payment amount, SO Martin stated:

> Your payment proposal of $12,500/month cannot be accepted. * * *
> [T]he proposed dollar amount does not reflect * * * [petitioner's]
> ability to pay. The taxpayer is allowed ordinary expenses for his
> health and welfare, the professional fees and costs not reflected in the
> form 433A do not qualify as necessary living expenses.

With respect to the liquidation of assets, SO Martin responded:

> In your most recent letter you state that the taxpayer does not want to
> liquidate his assets as you still have litigation pending before the Ninth
> Circuit and proposes waiting until all of his appeal rights have been
> exhausted. As previously stated in my initial conference letter, the
> subject tax liabilities are based on a judicial decision and although you
> have appealed the decision to the Ninth Circuit Court of Appeals the
> Service is not required to withhold collection absence [sic] the posting
> of a bond which was not done. In addition the Ninth Circuit ruled on
> 3/11/2011 that your motion to stay collection was denied. Your
> request to enter into a collateral agreement and wait to liquidate the
> taxpayer's assets cannot be granted.

With respect to petitioner's tax compliance, SO Martin stated: "During our telephone conference you were advised that the taxpayer must be in full compliance to be eligible for an installment agreement. Our records indicate that the taxpayer has not made any estimated tax payments for 2012." Finally, with respect to petitioner's plans to pay down his corporate loan account with his rental income, SO Martin responded: "The taxpayer's plans to begin paying down his officer's loan account at this juncture when the loans have been accruing since

[*15] 1987 with no repayments supports the conclusion that the taxpayer is not making a serious attempt to pay his delinquent taxes."

SO Martin concluded her letter as follows:

Unless the taxpayer is willing to liquidate his 401K plan and life insurance, be in compliance, and agree to an installment plan that reflects his ability to pay, your proposed collection alterative of an installment agreement cannot be granted and the proposed levy and lien filing will be sustained. Please respond to me by July 23, 2012[;] otherwise I will issue a determination letter with my findings. [Emphasis added.]

On July 23, 2012, petitioner sent SO Martin a letter requesting an extension of time until August 15, 2012, to respond to her letter dated June 28, 2012, and to make estimated tax payments for 2012. In that same letter petitioner requested a face-to-face hearing before the issuance of a notice of determination.

On July 30, 2012, SO Martin discussed the case with her Appeals team manager, who agreed that petitioner was not entitled to additional time to respond for the following reasons: (1) petitioner was not in full compliance; (2) petitioner was unwilling to liquidate his assets; and (3) petitioner was unwilling to enter into an installment agreement that reflected his ability to pay.

On August 7, 2012, SO Martin advised petitioner via telephone that she could not recommend accepting his proposed installment agreement because he was not in full compliance, he was unwilling to liquidate his assets, and he

[*16] proposed to pay his unsecured corporate loan ahead of the IRS' secured debt. SO Martin further advised petitioner that a face-to-face meeting would serve no purpose since he did not qualify for an installment agreement. Finally, SO Martin informed petitioner of her decision to sustain the lien and levy filings.

On August 21, 2012, SO Martin issued a notice of determination which sustained the issuance of the notice of intent to levy and concluded that petitioner did not qualify for an installment agreement. In the notice of determination SO Martin verified that she had no prior involvement with petitioner's case, verified that all legal and procedural requirements had been met, and balanced the need for efficient collection with petitioner's legitimate concerns that the collection action be no more intrusive than necessary.

## Discussion

Section 6301 empowers the Commissioner to collect the taxes imposed by the internal revenue laws. To further that objective, Congress has provided that the Commissioner may effect the collection of taxes by, among other methods, liens and levies. Section 6321 imposes a lien in favor of the United States on all property and property rights of a taxpayer liable for taxes after a demand for the payment of the taxes has been made and the taxpayer fails to pay those taxes. The lien arises at the time assessment is made and continues until the liability is

[*17] satisfied or becomes unenforceable by lapse of time. Sec. 6322. Section 6331(a) authorizes the Commissioner to levy upon all property or property rights of any taxpayer liable for any tax who neglects or refuses to pay that liability within 10 days after notice and demand for payment.

When the Commissioner pursues collection by lien or levy, he must notify the affected taxpayer in writing of his or her right to a hearing with an impartial Appeals officer. See secs. 6320(a) and (b) (relating to liens), 6330(a) and (b) (relating to levies). Where a hearing is requested, whether in response to an NFTL filing or a proposed levy, the presiding Appeals officer must satisfy the standards set forth in section 6330. See secs. 6320(b)(4), 6330(c).

As a preliminary matter we note that although the petition in this case is entitled "Petition for Redetermination of Lien or Levy Action under Code Section 6320 and/or 6330(d)", our jurisdiction is limited to the review of the levy action pursuant to section 6330(d). Petitioner failed to timely request a CDP hearing regarding the NFTL and was granted an equivalent hearing as provided for by section 301.6320-1(i), Proced. & Admin. Regs. In Kennedy v. Commissioner, 116 T.C. 255, 262-263 (2001), we held that where a taxpayer's request for a CDP hearing is untimely, the Commissioner's decision to conduct an equivalent hearing does not waive the time restrictions for requesting such a hearing, and the Court

**[*18]** lacks jurisdiction to review the Commissioner's determination. See also Moorhous v. Commissioner, 116 T.C. 263, 269-271 (2001). Accordingly, we review only respondent's determination to sustain the notice of intent to levy.

As part of the CDP hearing, Appeals must take into consideration: (1) verification that the requirements of applicable law and administrative procedure have been met; (2) relevant issues raised by the taxpayer concerning the collection action; and (3) whether the proposed collection action balances the need for the efficient collection of tax with the taxpayer's legitimate concern that the collection action be no more intrusive than necessary. Sec. 6330(c)(3). Relevant issues may include appropriate spousal defenses, challenges to the appropriateness of the collection actions, and potential collection alternatives such as an installment agreement or an offer-in-compromise. Sec. 6330(c)(2)(A).

A taxpayer is precluded from challenging the existence or amount of the underlying tax liability unless the individual did not receive a notice of deficiency for the tax liability or was not otherwise provided with an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). Petitioner has had the opportunity to dispute his income tax liabilities for the years at issue in the

**[\*19]** deficiency case and is therefore precluded from challenging the existence or the amounts of his underlying liabilities in this case.

Where the validity of the underlying tax liability is not at issue, we review Appeals' determinations for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. Abuse of discretion exists where the Appeals officer's determinations are arbitrary, capricious, or without sound basis in fact or law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007). The Court of Appeals for the Ninth Circuit has held that judicial review of nonliability issues under section 6330(d) is limited to the administrative record (i.e., the administrative record rule). See Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g T.C. Memo. 2006-166.[4]

---

[4]Recently, the Court of Appeals for the District of Columbia Circuit held in Byers v. Commissioner, 740 F.3d 668, 675-677 (D.C. Cir. 2014), aff'g T.C. Memo. 2012-27, that under sec. 7482 the Court of Appeals for the District of Columbia Circuit is the proper appellate venue in collection cases under secs. 6320 and 6330 where the underlying liability is not at issue. However, the court in Byers further stated: "We have no occasion to decide in this case whether a taxpayer who is seeking review of a CDP decision on a collection method may file in a court of appeals other than the D.C. Circuit if the parties have not stipulated to venue in another circuit." Id. at 677. In the light of Byers, we are mindful of the uncertainty of appellate venue and the controlling law in this case. We further note, however, that we have not found a case wherein the Court of Appeals for the District of Columbia Circuit has either adopted or rejected the administrative record rule in a collection case under sec. 6320 or sec. 6330.

**[*20]** I.     IRS Rejection of the Installment Agreement

"Section 6159 authorizes the Commissioner to enter into written agreements allowing taxpayers to pay tax in installment payments if he deems that the 'agreement will facilitate full or partial collection of such liability.'" Thompson v. Commissioner, 140 T.C. 173, 179 (2013) (quoting section 6159(a)).  The decision to accept or reject installment agreements lies within the discretion of the Commissioner.  Id. (citing section 301.6159-1(a) and (c)(1)(i), Proced. & Admin. Regs.).  If an Appeals or settlement officer follows all statutory and administrative guidelines and provides a reasoned and balanced decision, the Court will not reweigh the equities.  Lipson v. Commissioner, T.C. Memo. 2012-252, at *9.

Petitioner argues that SO Martin abused her discretion when she rejected his proposed installment agreement.  SO Martin rejected petitioner's proposed installment agreement for three reasons:  (1) petitioner was not in full compliance with the tax laws; (2) petitioner refused to liquidate his assets to effect a partial payment; and (3) petitioner's proposed monthly payment did not reflect his ability to pay.  We address each of these reasons in turn.

[*21] A.    Full Compliance With Tax Laws

Petitioner argues that SO Martin abused her discretion and erred as a matter of law by requiring him to be current with his estimated tax payments before she would accept his proposed installment agreement.  We disagree.

We have consistently held that an Appeals officer does not abuse his discretion in denying a taxpayer's request for an installment agreement when the taxpayer is not in compliance with his current tax obligations as of the date of the CDP hearing.  See, e.g., Starkman v. Commissioner, T.C. Memo. 2012-236 (sustaining rejection where taxpayer failed to timely file his tax return or make estimated tax payments); Pavlica v. Commissioner, T.C. Memo. 2007-163 (sustaining rejection where the taxpayer had a history of tax noncompliance and failed to timely file his tax return); see also James G. Hood, D.D.S., M.S., P.S. v. United States, 329 Fed. Appx. 88 (9th Cir. 2008) (holding that the Appeals Officer did not abuse his discretion in rejecting the taxpayer's proposed installment agreement where the taxpayer was not current on its employment taxes).

Petitioner's argument is nearly identical to the taxpayer's argument in Lipson.  In Lipson v. Commissioner, at *8, the taxpayer argued that while the Internal Revenue Manual (IRM) pt. 5.14.1.2(8)(F) (Sept. 26, 2008) states that "current returns for taxes must be filed and current deposits paid to qualify for an

**[*22]** agreement", IRM pt. 5.14.1.4.1(19) (Sept. 26, 2008) goes on to state that "[i]f it appears a taxpayer will have a balance due at the end of the current year, the accrued liability may be included in an agreement."[5]  The taxpayer in Lipson v. Commissioner, at *8, argued that the settlement officer erred as a matter of law in determining that his lack of current compliance barred him from qualifying for an installment agreement.  The Court accepted the taxpayer's argument that the settlement officer had discretion to approve the proposed installment agreement. Id.  In addition, the Court found that the settlement officer did rely, in part, on the taxpayer's failure to pay current taxes in rejecting his proposed installment agreement.  Id. at *9.  However, the Court held that this reliance did not constitute an abuse of discretion because the settlement officer was not required to accept the proposed installment agreement.  Id.

Similarly, we conclude that although SO Martin could accept an installment agreement that included petitioner's current estimated tax liabilities, she acted within her discretion in declining to do so.  Moreover, contrary to petitioner's

---

[5]These standards have not materially changed in the version of the Internal Revenue Manual (IRM) that applies to this case:  IRM pt. 5.14.1.2(8)(F) (June 1, 2010) states that "current returns for taxes must be filed and current deposits paid before an installment agreement can be approved" and IRM pt. 5.14.1.4.1(18) (Mar. 4, 2011) states that "[i]f it appears a taxpayer will have a balance due at the end of the current year, the accrued liability may be included in an agreement".

[*23] assertions, we find that SO Martin knew that she had that discretion. In her letter dated February 13, 2012, SO Martin correctly informed petitioner: "Delinquent estimated tax payments can be included in an installment agreement."

Petitioner's reliance on Lofgren Trucking Serv., Inc. v. United States, 508 F. Supp. 2d 734, 739 (D. Minn. 2007), is misplaced. In Lofgren the Appeals officer erroneously determined that 2006 first quarter employment taxes were "new" tax debts incurred while a proposal was pending, when in fact, the taxpayer had submitted its payment plan during the second quarter of 2006 and had paid its 2006 second quarter employment taxes. Id. at 737-739. Moreover, in Lofgren the Appeals officer summarily denied the taxpayer's requested payment plan solely upon the basis of his mistaken belief that accepting the plan was impossible under the Code and the regulations because of the debt incurred for the first quarter of 2006. Lofgren is therefore distinguishable because petitioner had not paid his 2012 estimated taxes as of May 2, 2012, the date of the CDP hearing, and because SO Martin gave actual and fair consideration to petitioner's proposed installment agreement, rejecting it for a number of reasons.

B.    Liquidation of Assets

SO Martin further rejected petitioner's proposed installment agreement because he refused to liquidate his retirement account and his life insurance

[*24] policies. IRM pt. 5.14.1.4(5) (June 1, 2010) states in relevant part: "Taxpayers do not qualify for installment agreements if balance due accounts can be fully or partially satisfied by liquidating assets, unless * * * factors such as advanced age, ill-health, or other special circumstances are determined to prevent the liquidation of the assets".

We have routinely held that an Appeals officer does not abuse his discretion when he rejects an installment agreement because a taxpayer refuses to liquidate assets to satisfy his tax liabilities. In Bibby v. Commissioner, T.C. Memo. 2013-281, we held that an Appeals officer did not abuse his discretion in rejecting an installment agreement where the Appeals officer made clear that an installment agreement depended upon the liquidation of three real properties and the taxpayer would not agree to that condition precedent. In O'Donnell v. Commissioner, T.C. Memo. 2013-247, we held that an Appeals officer did not abuse his discretion in rejecting an installment agreement where the taxpayer failed to fully disclose his liquid assets and did not offer to pay his liabilities with those assets. See also Lipson v. Commissioner, at *9 (holding that the settlement officer acted within her discretion in rejecting an installment agreement where the taxpayer owned investments totaling $406,805 and noting that taxpayers do not generally qualify

[*25] for an installment agreement if balance due accounts can be fully or partially satisfied by liquidating assets).

In McCarthy v. Commissioner, T.C. Memo. 2013-214, at *4, the Appeals officer required the taxpayer to borrow against or liquidate his significant equity in various assets before she would consider his proposed installment agreement. Although the taxpayer did make attempts to borrow against his assets and had one loan request approved, the Appeals officer ultimately rejected his proposed installment agreement when he failed to borrow against or liquidate his assets. On review we held that the Appeals officer was not required to set a specific date by which the taxpayer must liquidate his assets and that she acted within her discretion in rejecting his proposed installment agreement. Id.

Petitioner argues that SO Martin abused her discretion because the pendency of an appeal of a decision imposing liability constitutes "special circumstances" warranting an exception to the general rule that assets must be liquidated to qualify for an installment agreement. We disagree.

Section 6213(a) bars the Commissioner from assessing a tax liability until our decision becomes final, and section 7481 makes our decisions final when opportunities for appeal have been exhausted. Section 7485(a)(1), however, supersedes section 6213(a) by providing that assessment or collection shall not be

[*26] stayed during an appeal unless a taxpayer files a bond with the Tax Court on or before the time his notice of appeal is filed.  See Burke v. Commissioner, 124 T.C. 189, 191 n.4 (2005); Kovacevich v. Commissioner, T.C. Memo. 2009-160 n.4; see also Dawn v. Richmond, 861 F.2d 268 (9th Cir. 1988) (unpublished table decision) (holding that the Commissioner's assessment of a deficiency and his collection activities during the pendency of an appeal did not violate any of the taxpayers' statutory or constitutional rights, where the taxpayers did not post a bond).[6]  To accept petitioner's argument that a pending appeal is a "special circumstance" necessitating departure from respondent's general collection policies would require us to blindly ignore the section 7485 bond requirement.  This we can not do.  Moreover, the Court of Appeals for the Ninth Circuit denied petitioner's motion to stay collection pending appeal.  Therefore, respondent was free to pursue collection action against petitioner, in accordance with his established policies.

Petitioner argues, for the first time on brief, that "special circumstances" existed because of the unique nature of the assets that SO Martin asked him to liquidate.  According to petitioner his section 401(k) plan account and life

_____

[6]Petitioner cites sec. 6863(c)(1), providing that seized property may not be sold "if a civil action is commenced in accordance with section 7429(b)".  However, sec. 6863(c)(1) is inapposite because this action was commenced under sec. 6330(d), not sec. 7429(b), which pertains to judicial review of jeopardy levies and jeopardy assessments.

[*27] insurance policies could not be replaced once liquidated and thus requiring their liquidation when the potential for reversal still existed was "unnecessarily punitive".[7] With regard to his retirement account, petitioner further argues that SO Martin should have applied the standards set forth in IRM pt. 5.11.6.2 (Dec. 2, 2011) (governing levy on retirement accounts)[8] by analogy to determine whether to require the liquidation of his section 401(k) plan account as part of an installment agreement. On the basis of the administrative record, we find that petitioner did not argue below that the special nature of a retirement account or a life insurance policy constituted "special circumstances" under IRM pt. 5.14.1.4(5). We likewise find that petitioner did not argue below that the IRS' standards governing levy on

_____

[7]Petitioner has not cited any case for the proposition that the nature of a retirement account or life insurance policy constitutes "special circumstances". But see McClanahan v. Commissioner, T.C. Memo. 2008-161 (holding that the settlement officer did not abuse his discretion in rejecting the taxpayer's proposed installment agreement when the taxpayer refused to make an initial payment corresponding to the realizable equity in his whole life insurance policies).

[8]Pursuant to IRM pt. 5.11.6.2 (Dec. 2, 2011), the IRS is required to consider the following factors in determining whether to levy on a taxpayer's retirement account: (1) whether nonretirement assets exist that are available for collection; (2) whether the taxpayer has engaged in "flagrant conduct"; and (3) whether the taxpayer relies on the retirement account (or will in the near future) for necessary living expenses. Examples of "flagrant conduct" include, inter alia, contributing to a retirement account while unpaid taxes were accruing, being convicted of tax evasion or assessed with a fraud penalty, and accruing tax liability on illegal income. The existence of "flagrant conduct" is determined on a case-by-case basis.

**[*28]** retirement accounts should be extended by analogy to the consideration of his proposed installment agreement.

We may not consider issues or arguments that a taxpayer does not raise as part of his CDP hearing. Giamelli v. Commissioner, 129 T.C. at 112-113 ("The statute [section 6330] contemplates consideration of issues 'raised' by the taxpayer at the hearing. Thus, if an issue is never raised at the hearing, it cannot be a part of the Appeals officer's determination."); sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs. ("In seeking Tax Court review of a Notice of Determination, the taxpayer can only ask the court to consider an issue, including a challenge to the underlying tax liability, that was properly raised in the taxpayer's CDP hearing.") Consequently, we may not consider these arguments.

Finally, petitioner argues that SO Martin abused her discretion by requiring him to liquidate his life insurance policies when respondent would "almost certainly" not receive any proceeds from that liquidation because they were "encumbered by First Interstate Bank as collateral at all relevant times". Petitioner's argument is at best confused and at worst disingenuous. SO Martin asked petitioner to liquidate the life insurance policies disclosed in his Form 433-A with cash value of $52,437 and policy numbers ending in 1286 and 2912. The life insurance policy assigned to First Interstate Bank had a policy number ending in

[*29] 5184.  Thus, SO Martin correctly concluded that there was "no evidence" supporting petitioner's contention that his life insurance policies ending in 1286 and 2912 were encumbered by First Interstate Bank.

C.     Reflection of Ability To Pay

Finally, SO Martin rejected petitioner's proposed installment plan of $12,500 a month because it did not reflect his ability to pay, which she determined to be approximately $29,000 a month.[9]  IRM pt. 5.14.1.4(4) (June 1, 2010) provides: "Installment agreements must reflect taxpayers' ability to pay on a monthly basis throughout the duration of agreements."  A taxpayer's ability to pay is determined by comparing his monthly income to allowable expenses.  Friedman v. Commissioner, T.C. Memo. 2013-44, at *9.  Therefore, a settlement officer may accept, at a minimum, a monthly payment equal to the excess of a taxpayer's monthly income over the taxpayer's allowable expenses.  Id.

In reviewing for abuse of discretion the Court does not recalculate a taxpayer's ability to pay nor substitute its judgment for that of the settlement officer.  O'Donnell v. Commissioner, at *15.

---

[9]We note that pursuant to an independent calculation of petitioner's monthly payment potential, RO Kelly determined that petitioner could pay $29,628 a month towards his outstanding tax liabilities.

[*30] SO Martin determined petitioner's monthly income on the basis of his financial disclosures and determined his allowable expenses according to local and national standards. We have held that a settlement officer does not abuse his discretion by adhering to local and national standards even if adherence to those standards would force taxpayers to change their lifestyle. Friedman v. Commissioner, at *10; cf. Aldridge v. Commissioner, T.C. Memo. 2009-276 (sustaining the Commissioner's use of the IRS' published national and local allowances as guidelines for basic living expenses in evaluating the adequacy of proposed installment agreements and holding that taxpayers have the burden of providing information to Appeals to justify a departure from the local standards).

Petitioner argues that SO Martin abused her discretion by not negotiating the amount of the monthly payment. Petitioner continues: "Boulware never had to make the difficult determination of what he could afford to pay on a monthly basis"; and he asserts that the liquidation requirement "obviated Boulware's need to determine what he was able to pay in an installment agreement". We disagree. During the CDP hearing on May 2, 2012, SO Martin informed petitioner that, according to her calculations, he had the ability to pay approximately $29,000 per month. Yet after this hearing petitioner offered to pay a mere $12,500 a month and informed SO Martin that he intended to pay $13,673 a month towards his officer

[*31] loan account. On the basis of petitioner's offer SO Martin understandably questioned the sincerity of his interest in paying his outstanding tax liabilities. Moreover, SO Martin was not required to "haggle" with petitioner over the monthly payment amount. In conclusion, we hold that SO Martin reasonably determined that the proposed monthly payment did not reflect petitioner's ability to pay.

II.    Face-to-Face Meeting

Petitioner argues that he did not receive a proper CDP hearing because SO Martin denied him a face-to-face hearing. Section 301.6330-1(d)(2), Q&A D6-D8, Proced. & Admin. Regs., states:

> CDP hearings are* * * informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting. A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof. * * *

> *     *     *     *     *     *     *

> Except as provided * * * [below], a taxpayer who presents in the CDP hearing request relevant, non-frivolous reasons for disagreement with the proposed levy will ordinarily be offered an opportunity for a face-to-face conference at the Appeals office closest to taxpayer's residence. * * *

> *     *     *     *     *     *     *

[*32] * * * A face-to-face CDP conference concerning a collection alternative, such as an installment agreement or an offer to compromise liability, will not be granted unless other taxpayers would be eligible for the alternative in similar circumstances. * * * Appeals in its discretion, however, may grant a face-to-face conference if Appeals determines that a face-to-face conference is appropriate to explain to the taxpayer the requirements for becoming eligible for a collection alternative. * * * For purposes of determining whether a face-to-face conference will be granted, the determination of a taxpayer's eligibility for a collection alternative is made without regard to the taxpayer's ability to pay the unpaid tax. * * *

Petitioner requested a face-to-face CDP conference to discuss a collection alternative--i.e., his proposed installment agreement. At the time petitioner made his request he was not eligible for an installment agreement because he was not in compliance with the tax laws and he refused to liquidate his assets.[10]

Moreover, we have consistently held that a taxpayer is not automatically entitled to a face-to-face CDP hearing. See, e.g., Katz v. Commissioner, 115 T.C. 329 (2000) (holding that a combination of telephone calls and letters constituted a

---

[10]Petitioner alleges that SO Martin refused to grant him a face-to-face hearing because he was a resident of Hawaii. Petitioner's assertion is belied by the record. SO Martin repeatedly stated that she would grant petitioner a face-to-face hearing if it became necessary. Although SO Martin was in Oregon, she told petitioner about various options for holding a face-to-face meeting--e.g., she could travel to Hawaii to conduct the hearing or she could participate remotely via teleconference while an Appeals officer in Hawaii conduced the hearing. On the basis of the administrative record we find that SO Martin denied petitioner's request for a face-to-face hearing, not because he resided in Hawaii, but because he was not eligible for a collection alternative.

[*33] proper CDP hearing); Radeke v. Commissioner, T.C. Memo. 2012-319, at *9 ("An informal telephone conference which gives the taxpayer the opportunity to discuss the merits of her case, settlement alternatives, and other issues related to the proposed levy is a proper CDP hearing."); Rivas v. Commissioner, T.C. Memo. 2012-20 (holding that an Appeals officer does not abuse his discretion in denying a taxpayer's request for a face-to-face hearing where the taxpayer failed to identify the relevant issues he wanted to discuss); Busche v. Commissioner, T.C. Memo. 2011-285, 102 T.C.M. (CCH) 566, 572 ("[A] taxpayer does not have an absolute right to a face-to-face hearing."). Therefore, we conclude that SO Martin acted within her discretion in denying petitioner's face-to-face hearing request.

Finally, petitioner alleged in his petition a number of errors that he has failed to argue on brief. Accordingly, we consider these issues to be conceded. See Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003) (holding that arguments not addressed in brief may be considered abandoned); Davis v. Commissioner, 119 T.C. 1 n.1 (2002).

Any arguments not discussed in this opinion are irrelevant, moot, or lacking in merit.

**[\*34]**  To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.
