# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Submitted October 26, 2015          Decided March 11, 2016

No. 14-1147

MICHAEL H. BOULWARE,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

———

On Appeal from the Decision
of the United States Tax Court

———

*Jonathan H. Steiner* was on the briefs for appellant. *John D. Cline* entered an appearance.

*Richard Farber* and *Patrick Urda*, Attorneys, U.S. Department of Justice, were on the brief for appellee.

Before: SRINIVASAN, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge:* In 1993 the Internal Revenue Service began a criminal investigation into Michael Boulware's financial dealings, which ultimately led to his convictions for tax evasion and tax fraud. *See United States v. Boulware*, 558 F.3d 971 (9th Cir. 2009). Boulware is the president and sole owner of two companies, Hawaiian Isle Enterprises, Inc. and HIE Holdings, Inc., which paid his legal and professional fees in the criminal trial and other litigation from 1998-2002. Because Boulware did not report the payments, which totaled approximately $2 million, as income, the IRS issued deficiency notices. The Tax Court held that the payments were taxable as corporate distributions, *HIE Holdings, Inc. v. Comm'r*, 97 T.C.M. (CCH) 1672 (2009), the Ninth Circuit affirmed, 521 F. App'x 602 (2013), and the Supreme Court denied certiorari. 134 S. Ct. 712 (2013).[1]

Boulware did not post a bond while pursuing his appeals, which permitted the IRS immediately to collect on his liability. *See* 26 U.S.C. § 7485(a)(1). Both the Tax Court and the Ninth Circuit denied Boulware's motions to stay collection pending appeal. *Hawaiian Isles Enters., Inc. v. Comm'r,* No. 10-72589 (9th Cir. Mar. 11, 2011). The IRS then began a collection action by notifying Boulware of its intent to record a federal tax lien against him, and in May, 2011 it mailed Boulware final notice of its intent to levy his assets. The notice informed Boulware of his right to a Collection Due Process (CDP) hearing, and Boulware timely requested one.

---

[1] The amounts of the underlying deficiencies have been fully litigated and are not in dispute here. In this case, we address only the IRS's collection action in connection with the underlying deficiency.

Settlement Officer Kimberly Martin conducted Boulware's CDP hearing by telephone and mail, though Boulware requested a face-to-face hearing on multiple occasions. During a May, 2012 telephone conversation, Martin set three requirements for entering into an installment payment agreement with Boulware. First, Boulware would have to agree to pay $29,000 per month, which Martin calculated was his "ability to pay" based upon Boulware's most recent tax returns and other financial documents. Second, Boulware would have to become compliant with all current tax obligations, including his estimated taxes for 2012. Finally, he would have to liquidate various personal assets, including a 401K account and two life insurance policies all together worth approximately $950,000, and put the proceeds toward his deficiency. Boulware then mailed Martin a counter-offer in which he proposed paying $12,500 per month[2] and waiting until he had exhausted his appeals to liquidate his retirement account and life insurance policies. His offer did not address his delinquent estimated taxes for 2012. In a letter of June 28, 2012, Martin rejected Boulware's proposal because it failed to meet any of the three requirements she had set. In August, Martin issued a "notice of determination" sustaining the levy action.

Boulware challenged that determination in Tax Court, arguing that Martin had abused her discretion by rejecting his proposed installment agreement and by refusing his request for a face-to-face hearing. The Tax Court upheld the

---

[2] Boulware indicated that he planned to divert much of his salary from his companies to pay back monies he had borrowed from them, which in turn would significantly reduce his taxable income and therefore his "ability to pay." Boulware had not made any payments on his officer loan accounts since 1987, and did not explain why he wanted to do so then.

4

determination, *Boulware v. Comm'r*, 107 T.C.M. (CCH) 1419 (2014), and Boulware now appeals.

**I.**

Where the underlying tax liability is not at issue in a CDP proceeding, we review the determination of the IRS for abuse of discretion. *Byers v. Comm'r*, 740 F.3d 668, 675 (D.C. Cir. 2014). Boulware argues that Martin's rejection of Boulware's proposed installment agreement was an abuse of discretion for three reasons.

First, Boulware argues that Martin erroneously believed she lacked discretion to approve a payment plan for a presently delinquent taxpayer. As the Tax Court found, however, Martin was not mistaken about her discretion. *Boulware*, 107 T.C.M. (CCH) 1419, at *22-23. The agency does not abuse its discretion by denying a request for an installment agreement when the taxpayer is not in compliance with his current tax obligations. *See Christopher Cross, Inc. v. United States*, 461 F.3d 610, 613 (5th Cir. 2006) ("[t]he failure to timely pay owed taxes is a perfectly reasonable basis for rejecting an offer in compromise relating to other unpaid taxes"); *Starkman v. Comm'r*, 104 T.C.M. (CCH) 199 (2012).

Second, Boulware argues that Martin failed to consider the alleged "special circumstances" involved in forcing him to liquidate his 401K account and life insurance policies while his appeal was still pending. The Internal Revenue Manual in effect at the time of the CDP hearing provided that taxpayers "do not qualify for installment agreements if balance due accounts can be fully *or partially* satisfied by liquidating assets," IRM § 5.14.1.4(5) (2012), and the agency ordinarily does not abuse its discretion by rejecting an installment

agreement because a taxpayer refuses to liquidate assets. *See Bibby v. Comm'r*, 16 T.C.M. (CCH) 665 (2013). The Commissioner may waive the liquidation requirement, however, if he determines that "factors such as advanced age, ill-health, or other special circumstances . . . prevent the liquidation of the assets." IRM § 5.14.1.4(5). According to Boulware, his circumstances were special because his retirement accounts and life insurance policies could not be restored if he were to prevail in his appeal and he could not re-build his retirement account at his advanced age. Nothing in the tax code exempts retirement accounts from collection, however, and if the pendency of an appeal were by itself a special circumstance that stayed collection, then the statutory requirement of a bond pending appeal, 26 U.S.C. § 7485(a)(1), would be rendered nugatory.

We need not decide whether the aggregation of Boulware's particular circumstances were "special," however, because, as the Tax Court explained, Boulware failed to raise the argument during his CDP hearing. *Boulware*, 107 T.C.M. (CCH) 1419, at *26-28; *see* Treas. Reg. § 301.6330-1(f)(2) ("In seeking Tax Court review of a Notice of Determination, the taxpayer can only ask the court to consider an issue . . . that was properly raised in the taxpayer's CDP hearing").

Third, Boulware argues that Martin improperly considered his criminal conviction for tax evasion in rejecting his proposed installment agreement. Nothing in the record supports this contention, however.

## II.

Pursuant to Treasury Regulation 26 CFR § 301.6330-1(d)(2), "a taxpayer who presents in the CDP hearing request relevant, non-frivolous reasons for disagreement with the

proposed levy will ordinarily be offered an opportunity for a face-to-face conference at the Appeals office closest to taxpayer's residence." Boulware argues he presented non-frivolous reasons for disagreeing with Martin's proposed liquidation of his 401K account and life insurance policies, wherefore he should have received a face-to-face hearing. A taxpayer has no right to such a hearing, however. The Treasury regulations expressly provide "CDP hearings . . . are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting." Treas. Reg. § 301.6330-1(d)(2)(A-D6).

From Boulware's offer to pay less per month than half his assessed "ability to pay," Martin "understandably questioned the sincerity of his interest in paying his outstanding tax liabilities." *Boulware*, 107 T.C.M. (CCH) 1419, at *31. Moreover, the Treasury regulations instruct that a "face-to-face CDP conference concerning a collection alternative . . . will not be granted unless other taxpayers would be eligible for the alternative in similar circumstances." Treas. Reg. § 301.6330-1(d)(2)(A-D8). Given that Boulware's failure to comply with his tax obligations made him generally ineligible for a collection alternative, Martin's denial of a face-to-face hearing was reasonable.

## III.

In sum, we hold the Commissioner did not abuse his discretion by rejecting Boulware's proposed payment plan or by denying his request for a face-to-face hearing. The judgment of the Tax Court is, therefore,

*Affirmed*