T.C. Memo. 2017-64

UNITED STATES TAX COURT

SHAWN DARREN ALLEN, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21632-15L.                          Filed April 17, 2017.

Shawn Darren Allen, pro se.

<u>Deborah Aloof</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case petitioner seeks

review pursuant to section 6330(d)(1)[1] of the determination by the Internal Reve-

_____

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[\*2]** nue Service (IRS or respondent) to uphold a notice of intent to levy. Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his action in sustaining the proposed levy was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached affidavits and exhibits. See Rule 121(b). Petitioner resided in Maryland when he filed his petition.

During 2010 petitioner was self-employed as an investigator for law firms. He filed a delinquent Federal income tax return for 2010 but did not pay the tax shown as due on that return. On December 17, 2012, the IRS assessed $11,854 against petitioner for 2010, representing his unpaid tax liability for that year plus additions to tax under section 6651(a) (for failure to file and timely pay) and section 6654(a) (for failure to pay estimated tax), along with interest. The IRS had previously made assessments of unpaid tax liabilities for 2004 through 2009. Petitioner's total outstanding tax liabilities for 2004 through 2010 exceeded $71,000.

In an effort to collect petitioner's unpaid liability for 2010, the IRS on March 24, 2014, issued him a Letter 1058, Final Notice of Intent to Levy and

**[*3]** Notice of Your Right to a Hearing.  Petitioner timely submitted Form 12153, Request for a Collection Due Process or Equivalent Hearing.   He checked the following boxes on that form:  "Installment Agreement," "Offer in Compromise," and "I Cannot Pay Balance," adding that he was unable to pay because of his "current financial situation."  He did not indicate any intention to dispute his underlying income tax liability for 2010.[2]

In January 2015 a settlement officer (SO) from the IRS Appeals Office informed petitioner that, if he wished to have a face-to-face conference, he had to submit complete copies of his tax returns for 2011, 2012, and 2013.  The SO further explained that, if petitioner wished to be considered for a collection alternative, he had to furnish bank statements for the six-month period ending December 2014, business profit and loss statements for the same period, and proof that he had made all required estimated tax payments.  The SO noted that, while past-due estimated tax payments "may be included in an installment agreement," an offer-in-compromise "can't be accepted unless estimated tax payments are paid in full."

---

[2]Although the notice of levy concerned 2010 only, petitioner in his CDP hearing request indicated a desire to seek relief for tax years 2004 through 2010, and the installment agreement ultimately proposed addressed his liabilities for all open years, including 2011 through 2013.

**[*4]**  After securing several postponements, petitioner attended a face-to-face CDP hearing on May 7, 2015.  At the hearing he submitted signed copies of his 2011-2013 returns and copies of his bank statements.  The SO explained to petitioner that he was not currently in compliance with his tax obligations because he had failed to make an estimated tax payment for the first quarter of 2015.  For that reason, he would be ineligible for an offer-in-compromise but could still be considered for an installment agreement.  Petitioner initially proposed an installment agreement of $500 per month.

After reviewing petitioner's bank statements and business records, the SO determined that petitioner had estimated monthly income of $6,788 and monthly living expenses of $5,979, yielding monthly disposable income of $809.  The SO determined that petitioner thus qualified for an installment agreement under which he would pay $809 per month over the balance of the collections period.

Because petitioner's total outstanding tax liabilities for 2004 through 2013 by then exceeded $93,000, monthly payments of $809 would not enable him to discharge those liabilities in full before the expiration of the collections period.  The SO thus treated petitioner as having requested a "partial-pay" installment agreement (PPIA).  After consulting the Internal Revenue Manual (IRM), the SO concluded that petitioner, under a PPIA, would not be eligible to have his past-due

[*5] estimated tax obligation for the first quarter of 2015 rolled into the monthly installments.  Rather, the SO informed him that he would need to make an upfront payment of $1,865, representing that past-due obligation, as a precondition for entering into the PPIA.

On May 21, 2015, petitioner told the SO that he would agree to an installment agreement of $809 per month and would make the required upfront payment of $1,865.  The next day the SO sent petitioner a Form 433-D, Installment Agreement, setting forth these terms.  The SO gave petitioner until June 8 to make the upfront payment; the SO later extended that deadline to June 12.  On June 18, petitioner advised the SO that he could not make the $1,865 payment.  The SO replied that he would then close the case.

On July 24, 2015, the IRS issued a notice of determination upholding the proposed levy, and petitioner timely petitioned this Court.  In his petition he assigned error to the SO's requirement that he pay $1,865 toward his delinquent 2015 estimated tax obligation in order to enter into the proposed PPIA as well as to the SO's alleged failure to consider his "current financial situation."  On October 13, 2016, respondent moved for summary judgment, and petitioner timely objected to that motion.

[*6]                                     Discussion

I.      Summary Judgment Standard and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid un-necessary and time-consuming trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genu-ine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  The burden of proving this rests on the moving party.  Bond v. Commissioner, 100 T.C. 32, 36 (1993).  But where the moving party makes and properly supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading." Rule 121(d).  Instead, he must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial.  Ibid.

In objecting to respondent's motion for summary judgment, petitioner as-serts that "there is a genuine issue of material fact" surrounding the SO's final determination.  But petitioner does not point to any specific facts in dispute; rath-er, he contends that requiring him "to pay his unpaid estimated taxes as a condi-tion precedent to * * * being allowed to enter into an installment agreement was arbitrary and capricious."  In light of the nature of this objection, we conclude that

**[*7]** this case may be adjudicated summarily on the basis of the parties' filings, including supporting affidavits.

Petitioner has not contested, at any stage of this case, his underlying tax liability for 2010 (or for any other year). That being so, we review the IRS' determination for abuse of discretion only. See Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

II.    Analysis

In deciding whether the SO abused his discretion in sustaining the proposed levy, we consider whether he: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

The SO analyzed the transcript of petitioner's account and verified that the liabilities in issue had been properly assessed and that all other requirements of

[*8] applicable law and administrative procedure had been met.[3] The principal argument petitioner advances is that the SO abused his discretion in determining that, in order to be eligible for a PPIA, petitioner "would first have to pay $1,865 in estimated tax payments for the first quarter of 2015." According to petitioner, that decision violates the second and third prongs of the three-pronged test of section 6330(c)(3).

In reviewing the SO's determination, we do not make an independent evaluation of what would be an acceptable collection alternative. See Thompson v. Commissioner, 140 T.C. 173, 179 (2013); Murphy, 125 T.C. at 320; Lipson v. Commissioner, T.C. Memo. 2012-252, 104 T.C.M. (CCH) 3383 (2012). Rather, our review is limited to determining whether the SO abused his discretion, that is, whether his decision to reject the taxpayer's proposal was arbitrary, capricious, or without sound basis in fact or law. See Thompson, 140 T.C. at 179; Murphy, 125 T.C. at 320.

---

[3]Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment" receives written supervisory approval. This provision does not apply to "any addition to tax under section 6651, 6654, or 6655." Sec. 6751(b)(2)(A). Accordingly, the SO was not required to verify that the additions to tax assessed against petitioner under sections 6651(a) and 6654(a) had been approved by a supervisor.

**[*9]** Section 6159 authorizes the Commissioner to enter into an installment agreement if he determines that it will facilitate full or partial collection of a taxpayer's unpaid liability. See Thompson, 140 T.C. at 179. Subject to exceptions not relevant here, the decision to accept or reject an installment agreement lies within the Commissioner's discretion. See sec. 301.6159-1(a), (c)(1)(i), Proced. & Admin. Regs.; see also Rebuck v. Commissioner, T.C. Memo. 2016-3; Kuretski v. Commissioner, T.C. Memo. 2012-262, aff'd, 755 F.3d 929 (D.C. Cir. 2014).

The type of agreement that petitioner proposed, and that the SO was willing to accept, was a PPIA. The Commissioner has created guidelines, set out in the IRM, for settlement officers to follow in determining the terms of a PPIA for a taxpayer who can pay some (but not all) of his outstanding tax liability. See Thompson, 140 T.C. at 179. In such situations, a prerequisite for preparing a PPIA for approval and processing is that the taxpayer be "in compliance with filing, withholding, federal tax deposit and estimated tax payment requirements." IRM pt. 5.14.2.1.4(1) (Sept. 19, 2014).

We have previously ruled that a settlement officer properly exercises his discretion by adhering to IRM provisions governing acceptance of collection alternatives. See Veneziano v. Commissioner, T.C. Memo. 2011-160, 102 T.C.M. (CCH) 22 (2011); Etkin v. Commissioner, T.C. Memo. 2005-245, 90 T.C.M.

[*10] (CCH) 417 (2005); Schulman v. Commissioner, T.C. Memo. 2002-129, 83 T.C.M. (CCH) 1738 (2002). We have accordingly held that an Appeals officer does not abuse his discretion in declining to enter into an installment agreement where the taxpayer is unwilling or unable to comply with his on-going estimated tax obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007); Boulware v. Commissioner, T.C. Memo. 2014-80, 107 T.C.M. (CCH) 1419, 1424 (rejecting argument that a settlement officer abuses his discretion "by requiring * * * [the taxpayer] to be current with his estimated tax payments before * * * [the settlement officer] would accept his proposed installment agreement"), aff'd, 816 F.3d 133 (D.C. Cir. 2016).

The taxpayer argued in Boulware that the settlement officer would have acted within his discretion if he had agreed to roll the delinquent estimated tax payment into the installment agreement instead of requiring that it be paid up front. We nevertheless concluded that, "although * * * [the settlement officer] could accept an installment agreement that included petitioner's current estimated tax liabilities, she acted within her discretion in declining to do so." Boulware, 107 T.C.M. (CCH) at 1425 (emphasis in original). We reach the same conclusion here: The SO did not abuse his discretion when he insisted, consistently with the IRM, that petitioner make an upfront payment of $1,865 to discharge his estimated

[*11] tax liability for the first quarter of 2015 as a condition of executing the

PPIA.[4]

Petitioner also contends that he "wasn't afforded the opportunity to provide current financial information" and that the SO did not sufficiently explore changes to his financial condition. But the burden of updating the SO about changes in the taxpayer's financial situation rests on the taxpayer. See Epitome Sys., Inc. v. Commissioner, T.C. Memo. 2015-108, 109 T.C.M. (CCH) 1556 (2015) (noting that it is incumbent on the taxpayer to provide relevant financial information to the settlement officer); Cavazos v. Commissioner, T.C. Memo. 2008-257; Prater v. Commissioner, T.C. Memo. 2007-241. Nothing in the record suggests that the SO was unreceptive to communications from petitioner on this subject. Indeed, the SO regularly asked petitioner to supply relevant financial documentation and readily accommodated all of his requests to extend deadlines and postpone meetings. We find that petitioner had ample opportunity to furnish the SO with any infor-

---

[4]Petitioner focuses on the wording of the SO's January 13, 2015, letter, which stated that past-due estimated tax payments "may be included in an installment agreement." But the letter by its terms did not promise this treatment; after consulting the IRM, the SO reasonably determined that an upfront payment of petitioner's delinquent estimated tax payment should be required because he was offering only a PPIA. Petitioner states that, when he proposed incorporating the $1,865 amount into the installment agreement, the SO "got upset and stated that the rules don't allow that." As noted in the text, the relevant IRM provisions clearly afforded the SO the discretion to insist that the $1,865 be paid up front.

[*12] mation petitioner thought relevant. And we decline to impose on settlement officers an affirmative obligation to ferret out how a taxpayer's financial situation might have changed before formulating a collection alternative.

On the record before us, we find that the SO in upholding the proposed levy properly balanced the need for efficient collection of taxes with petitioner's legitimate concern that the collection action be no more intrusive than necessary. Petitioner and the SO reached agreement on a PPIA and petitioner stated that he would make the $1,865 upfront payment required by that agreement. When petitioner did not carry through on this pledge, the SO acted reasonably in rejecting a collection alternative and closing the case. Finding no abuse of discretion in this or any other respect, we will grant summary judgment for respondent and sustain the proposed levy.

To reflect the foregoing,

An appropriate order and decision will be entered.