T.C. Memo. 2016-211

UNITED STATES TAX COURT

PATRICIA J. ANDERSON AND THOMAS BRODERSEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 961-14L.                          Filed November 21, 2016.

Wallace B. Anderson, Jr., for petitioners.

Anne M. Craig, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  This case is before the Court on a petition for judicial

review filed in response to Notices of Determination Concerning Collection

Action(s) Under Section 6320 and/or 6330 (notices of determination) dated

[*2] December 16, 2013.[1]  The issues for decision are:  (1) whether petitioners may challenge the allocation of a voluntary payment; (2) whether respondent's settlement officer abused his discretion by denying petitioners a face-to-face hearing; (3) whether petitioners received a proper and impartial collection due process (CDP) hearing; and (4) whether respondent abused his discretion by rejecting petitioners' offer-in-compromise and sustaining collection actions.

FINDINGS OF FACT

I.    Background

For all years in issue petitioners Thomas Brodersen and Patricia Anderson were attorneys practicing real estate law.  They were the sole owners of a law firm named Anderson & Brodersen, P.A.  Petitioners resided in Florida at the time they timely filed their petition.

Petitioners untimely filed their Federal income tax returns for 2006, 2007, 2008, 2009, and 2010.  Petitioners timely filed their income tax returns for 2011 and 2012.  All of petitioners' returns had balances due, amounting to a total liability in excess of $100,000.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

**[*3]** II.     Respondent's Collection Actions

Revenue Officer Joshua Cockerell was assigned to collect petitioners' outstanding income tax liabilities. Revenue Officer Cockerell contacted petitioners' representative on August 24, 2012, and requested that petitioners: (1) provide a collection information statement, (2) provide proof of estimated tax payments for 2012, and (3) file income tax returns for 2006 and 2007. He set a deadline of September 21, 2012, for petitioners to provide the requested documents.

On October 4, 2012, over a week past the deadline, petitioners faxed Revenue Officer Cockerell a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and the unfiled 2006 and 2007 Federal income tax returns. Petitioners also informed Revenue Officer Cockerell that they had not made any estimated tax payments for 2012.

On December 10, 2012, petitioners were assessed trust fund recovery penalties (TFRPs) for failing to collect and pay over tax for their law firm for the seven quarterly periods ending September 30 and December 31, 2009; March 31 and June 30, 2010; and March 31, June 30, and September 30, 2011.

On January 7, 2013, each petitioner was issued a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing for the joint income tax

[*4] liability for 2006 as well as for the TFRPs described above.  On January 17, 2013, each petitioner was issued a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 for the same liabilities.

On January 18, 2013, Wallace B. Anderson, Jr., petitioners' attorney, timely filed two Forms 12153, Request for a Collection Due Process or Equivalent Hearing.  Several days after requesting the CDP hearing, Mr. Anderson faxed Revenue Officer Cockerell an updated Form 433-A.  Revenue Officer Cockerell reviewed the Form 433-A and proposed that petitioners liquidate petitioner wife's retirement account to partially pay their outstanding liabilities.  He further proposed that petitioners enter into an installment agreement to pay the balance.

Petitioner wife liquidated her retirement account and on February 14, 2013, mailed a letter and a check for $61,669.28 to Revenue Officer Cockerell.  The body of the letter read:  "Enclosed please find our firm IOTA trust check account number 2512 in the amount of $61,669.28, to be applied to our delinquent taxes.  If you have any questions, please let Wally Anderson or me know."  The memo section of the check read:  "Back Taxes".

Revenue Officer Cockerell applied a portion of the voluntary payment against petitioners' TFRPs, paying the liabilities in full.  He also applied the remaining portion of the voluntary payment against petitioners' 2007, 2008, 2009,

**[*5]** 2010, and 2011 joint income tax liabilities. The payment satisfied the 2007, 2008, 2010, and 2011 tax liabilities but did not fully satisfy the tax liability for 2009. Furthermore, no amount was applied against petitioners' liability for 2006. Petitioners' remaining tax liabilities for 2006 and 2009 exceeded $50,000.

Revenue Officer Cockerell continued to work with petitioners to resolve their liabilities before transferring the case to the Internal Revenue Service (IRS) Appeals Office (Appeals). He recommended an installment agreement of $825 per month. Mr. Anderson stated that petitioners could not afford that amount and instead proposed filing an offer-in-compromise.

On April 3, 2013, Revenue Officer Cockerell submitted the CDP case to Appeals.

III.   CDP Hearing

On April 16, 2013, a representative from the Jacksonville Appeals Office sent letters to petitioners and Mr. Anderson acknowledging receipt of petitioners' case. The letters stated that Brian M. Blue would be their contact person. The letters also stated that CDP hearings are generally conducted by telephone or mail but if petitioners preferred a face-to-face hearing, they had to request one within 15 days.

**[\*6]**  On April 24, 2013, Mr. Anderson responded with the following fax:

> Mr. Blue:
>
> Attached and enclosed are the assignments of the appeals for the above taxpayers to your office.
>
> My clients are self-employed attorneys.  The documentation is substantial.
>
> In the best interest of my clients and the IRS, these appeals would be handled more efficiently by transferring them to the Tampa, Florida IRS Appeals Office.
>
> Yours,
>
> Wallace B. Anderson, Jr.

After receiving the fax Settlement Officer Brian Blue reviewed petitioners' compliance history.  He discovered that a return was filed for 2012 but tax had not been assessed.  He also discovered that petitioners had not made estimated tax payments for 2012 or 2013.

On April 25, 2013, Mr. Anderson and Settlement Officer Blue spoke by telephone.  Settlement Officer Blue explained that in order to have the case transferred to the Tampa Appeals Office, petitioners would have to be in compliance with all filing and estimated tax payment requirements.  Mr. Anderson admitted that there was a balance owed for petitioners' 2012 return and that petitioners had not made any estimated tax payments for 2013.

[*7]   On May 6, 2013, Settlement Officer Blue received petitioners' Form 656, Offer in Compromise.  Petitioners offered $6,000 to settle over $50,000 in income tax liabilities, additions to tax for failure to file timely, and accrued interest for tax years 2006 through 2012.

On May 9, 2013, Settlement Officer Blue mailed each petitioner a detailed letter proposing a telephone conference for June 3, 2013.  He reiterated that estimated tax payments had to be paid in full before an offer-in-compromise could be accepted and that IRS records indicated they had not made estimated tax payments for 2012 or 2013.  He also wrote that because petitioners had a business with employees, they also had to have timely paid any required Federal tax deposits for the current quarter.  Settlement Officer Blue asked that petitioners send the following information within 14 days:  (1) a completed Form 433-B, Collection Information Statement for Businesses; (2) a signed Form 941, Employer's Quarterly Federal Tax Return; and (3) proof of estimated tax payments for the 2012 and 2013 taxable years.

As of May 31, 2013, Settlement Officer Blue had not received any of the requested information or documents.  However, Mr. Anderson did send Settlement Officer Blue a fax requesting that the telephone conference be postponed.  The parties agreed to postpone the telephone conference and further agreed that Mr.

[*8] Anderson would call on June 3, 2013, to schedule a new date for the telephone conference.

Mr. Anderson did not call Settlement Officer Blue on the agreed-upon date and did not respond to Settlement Officer Blue's phone call on June 4, 2013. Mr. Anderson did, however, fax a Form 433-B for the law firm along with some supporting documentation.

Settlement Officer Blue reviewed the documents and called Mr. Anderson. He stated that none of the requested documents relating to petitioners in their individual capacities had been sent. Furthermore, Settlement Officer Blue reminded Mr. Anderson that petitioners had made no 2013 estimated tax payments, which were necessary before they could qualify for an offer-in-compromise. They scheduled a conference call for July 1, 2013.

Mr. Anderson and petitioners called Settlement Officer Blue for the scheduled conference call. Settlement Officer Blue again reminded petitioners that they had not made estimated tax payments for 2013. Petitioner wife responded that she and her husband were no longer taking distributions from the law firm and that they were instead receiving salaries. Petitioner wife also informed Settlement Officer Blue that they had recently completed a new Form 433-A reflecting this new arrangement. Mr. Anderson stated he would fax the

[*9] new Form 433-A. Settlement Officer Blue informed petitioners that they needed to supplement the Form 433-A with copies of their pay stubs showing their new salaries. A followup conference call was scheduled for July 16, 2013.

On July 3, 2013, Mr. Anderson faxed Settlement Office Blue the updated Form 433-A and bank statements. Several days later Mr. Anderson sent Settlement Officer Blue health insurance documents, a summary of petitioners' paychecks, and a copy of the $61,669.28 check petitioners had used to pay down their tax liabilities. Mr. Anderson also inquired as to how the $61,669.28 voluntary payment was credited against petitioners' tax liabilities. Settlement Officer Blue ordered account transcripts for the relevant periods and faxed copies to Mr. Anderson.

On either July 15 or 16, 2013, the parties had a followup conference call[2] during which Settlement Officer Blue explained how the $61,669.28 voluntary payment had been applied. The parties also discussed petitioners' updated Form 433-A. Settlement Officer Blue explained that petitioners had included many expenses that were incurred but not actually paid and that he could generally

---

[2] Respondent argues that the conference call was held on July 16, 2013, citing the administrative record. Petitioners argue the conference call was held on July 15, 2013, citing petitioner wife's trial testimony and her personal calendar (which is not in the record). Whether the conference call was held on July 15 or 16 is immaterial to the resolution of this case.

**[\*10]** consider only expenses actually paid.  He said he would use the information they had provided to prepare an asset/equity table and an income/expense table and that he would fax copies of the tables to Mr. Anderson.  They scheduled a followup conference call for August 1, 2013.

Settlement Officer Blue prepared the tables and concluded that petitioners could pay their liabilities in full.  The tables showed that a combination of petitioners' net realizable equity in their assets and a net difference in income over expenses of $1,160 per month would allow petitioners to pay off their liabilities over the life of the collection period of limitations.  Settlement Officer Blue faxed copies of the tables to Mr. Anderson.

Shortly after receiving the tables Mr. Anderson realized that his clients had submitted a standard Form 433-A rather than a Form 433-A (OIC).  Because he was concerned that petitioners' assets might have been overstated on the standard Form 433-A, Mr. Anderson faxed Settlement Officer Blue informing him that petitioners might need to postpone the August 1, 2013, meeting to allow them time to complete the Form 433-A (OIC).

Mr. Anderson did not call in for the scheduled conference on August 1, 2013, and he did not return Settlement Officer Blue's phone call on July 30, 2013.  He did, however, send Settlement Officer Blue faxes on July 22, 29, and 31, 2013,

[*11] requesting additional time to complete the Form 433-A (OIC), citing petitioner wife's upcoming surgery and various client hearings she had scheduled for August. Mr. Anderson sent an additional fax on August 4, 2013, again requesting an extension of time until September 30, 2013, to submit additional documents and have property professionally appraised.

Settlement Officer Blue prepared a letter dated August 5, 2013 (August 5 letter), and mailed it to petitioners at their home address. The relevant portions of the letter stated:

> A telephone conference was held on 7/16/2013 with you and your Power of Attorney (POA) Wallace B. Anderson, Jr. regarding your CDP hearing request and you're [sic] Offer in Compromise (OIC) in the amount of $6,000 which you submitted as a collection alternative. During the conference I explained that I would be providing you with an Income/Expense Table (IET) and an Asset/Equity Table (AET). I completed and faxed the documents to your POA on 7/17/2013 and asked that he review them and call me to discuss. I have enclosed copies of the IET & AET documents for your review. I have been trying to contact him and left messages for him on 7/30 and again on 8/1 but have not received a return call. I have instead rec'd faxes from him dated 7/22, 7/29, 7/31 and 8/4 in which he is requesting an extension until 9/30/2013 to provide a new Form 433-A(OIC) and have written appraisals done on your personal property.
>
> The purpose of this letter is to advise you that based on the IET and AET documents; your OIC submitted under doubt as to collectibility cannot be accepted because it appears that you can full pay the liability. The IET shows a net difference of income over expenses of $1,160 a month which would full pay your liability in the amount of $57,504.09 plus additional accruals over the life of the collection

**[*12]** statute. There is no valid reason in this case for you to incur the additional effort and expense of having your personal property professionally appraised.

    \*        \*        \*        \*        \*        \*        \*

An offer in compromise is just one of the payment alternatives that may be available to a taxpayer but the acceptance of an offer is not guaranteed or statutorily required in any case. A streamlined installment agreement under the fresh start initiative is a potential collection alternative or we can consider other installment agreement options. I have scheduled a follow-up conference for 8/23/2013 for you to call in at 1:00 p.m. If this time will not work for you, please call me so that we can arrange another time to hold the conference.

Mr. Anderson became frustrated with Settlement Officer Blue following the issuance of the August 5 letter. Mr. Anderson faxed Settlement Officer Blue stating that he would not be available for the conference and would have to reschedule.

Settlement Officer Blue made several attempts to reschedule the conference, but Mr. Anderson refused to return his calls. However, several weeks later, Settlement Officer Blue received a fax which was addressed to himself as well as to Mr. Clark, an Appeals group manager; and Mr. Little, a representative from the IRS Taxpayer Advocate Service. Mr. Anderson stated in the fax that Settlement Officer Blue was refusing to consider an offer-in-compromise because petitioners were not current with tax payments. He further stated: "It is regrettable that Mr.

[*13] Blue unilaterally rejected my clients' procedural entitlement to file an IRS 433-A (OIC) Form then may have deleted information that supports my clients' right to file the form".

The next day Settlement Officer Blue wrote the following in his case history:

> [Mr. Anderson] is continually making statements that are not true and refuses to answer any of my calls. I did not know that TAS was involved in this case and I don't know who Mr. Little is. I have had several conferences since receiving these cases in April and have determined from the (2) 433-A's in the file that TP OIC for $6,000 is not a viable option and have recommended that TP consider an installment agreement.

Appeals Team Manager Clark later contacted Mr. Anderson to discuss petitioners' case. They agreed that petitioners would complete a third collection information statement supported by proper documentation and mail the package to Settlement Officer Blue by October 4, 2013. Appeals Team Manager Clark advised Mr. Anderson that the case would not be transferred and that Settlement Officer Blue would make a determination based on the information provided. He also told Mr. Anderson that Settlement Officer Blue would not contact Mr. Anderson unless necessary.

[*14] On October 3, 2013, Mr. Anderson sent by overnight delivery a cover letter and several enclosures, including a Form 433-A (OIC). Settlement Officer Blue reviewed the documents and noticed some errors.

On October 25, 2013, Settlement Officer Blue sent a fax to Mr. Anderson highlighting the errors and pointing out that petitioners had miscalculated their total equity in assets. Mr. Anderson acknowledged that there were discrepancies in the Form 433-A (OIC) and stated that he would fax new information to Settlement Officer Blue. Settlement Officer Blue made clear that any new information submitted had to be accompanied by copies of petitioners' business bank statements.

On November 3, 2013, Mr. Anderson faxed Settlement Officer Blue petitioners' personal bank statements, but he did not fax the requested business bank statements. The next day, Settlement Officer Blue reminded Mr. Anderson that he needed petitioners' business bank statements. Mr. Anderson responded with a single-page fax of a table showing accounts payable for petitioners' law firm of $23,077.17. Mr. Anderson did not produce the business bank statements.

On November 13, 2013, Settlement Officer Blue called Mr. Anderson and left a message saying he needed to discuss petitioners' case and that the information Mr. Anderson had provided did not adequately address prior requests.

[*15] By November 20, 2013, Mr. Anderson had not responded to Settlement

Officer Blue. Consequently, Settlement Officer Blue faxed Mr. Anderson the

following letter:

> Mr. Anderson,
>
> This is to follow-up with the fax that I sent you on 11/4/2013 (copy attached) regarding the 433-A (OIC) from Patricia Anderson and Thomas Brodersen. I have tried calling you and left a message but have not heard back from you. I need for you to respond to my questions in the fax before I can determine an appropriate collection alternative in this case.
>
> Please note that I have been working on these CDP cases for about seven months and have put much effort into trying to find an appropriate resolution for the taxpayers. Unless I hear back from you with answers to my questions by COB 11/25/2013, I will have to issue a determination letter.
>
> Thank You

Mr. Anderson called Settlement Officer Blue later that day. They discussed the

case, Settlement Officer Blue set forth his concerns, and Mr. Anderson stated that

he would relay those concerns to petitioners. Settlement Officer Blue told Mr.

Anderson that he would need to resolve the outstanding issues by the end of the

day on November 25, 2013, or a determination letter would be issued.

**[\*16]** By November 29, 2013, Settlement Officer Blue had not received a response from Mr. Anderson. He called Mr. Anderson and left a message extending the deadline to December 4, 2013.

By December 5, 2013, Settlement Officer Blue had still not received a response from Mr. Anderson. Consequently, Settlement Officer Blue began working on the notices of determination, which were approved the following day. Respondent issued the notices of determination on December 16, 2013, rejecting petitioners' offer-in-compromise and sustaining the proposed collection actions.[3] Petitioners timely petitioned the Court to review respondent's determination.

OPINION

I.      Statutory Framework

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a taxpayer liable for tax when a demand for payment of the tax has been made and the taxpayer fails to pay the tax. Section 6320(a) provides that the Secretary shall furnish the taxpayer with an NFTL within five business days after the notice of lien is filed.

---

[3] Before the notices of determination were issued, Settlement Officer Blue verified that all legal and administrative requirements for collection had been met.

**[*17]** Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days after notice and demand for payment is made. Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.

If a taxpayer requests a hearing in response to an NFTL or a notice of levy pursuant to section 6320 or 6330, a hearing shall be held before an impartial officer or employee of Appeals. Secs. 6320(b)(1), (3), 6330(b)(1), (3). The hearing under section 6320 generally shall be conducted in a manner consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c). At the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). In addition to considering issues raised by the taxpayer under section 6330(c)(2), the Appeals officer must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1), (3).

A taxpayer is precluded from contesting the existence or amount of the underlying tax liability unless the taxpayer did not receive a notice of deficiency

**[*18]** for the liability in question or did not otherwise have an earlier opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing, Appeals must determine whether to sustain the filing of the lien and whether proceeding with the proposed levy is appropriate. In making that determination Appeals is required to take into consideration: (1) the verification required by section 6330(c)(1); (2) relevant issues raised by the taxpayer; and (3) whether the proposed lien or levy action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action. Sec. 6330(c)(3). Section 6330(d)(1) grants this Court jurisdiction to review Appeals' determination in connection with a collection hearing. Where the validity of the underlying tax liability is properly at issue, we review the taxpayer's liability de novo. See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where (as here) the underlying tax liability is not properly at issue, we review the determination for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182. To establish abuse of discretion, the taxpayer must show that the determination is arbitrary, capricious, or without sound basis in fact or law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007)

**[\*19]** (citing Sego v. Commissioner, 114 T.C. at 610, and Woodral v. Commissioner, 112 T.C. 19, 23 (1999)).

II.     Payment Allocation

First we address petitioners' $61,669.28 voluntary payment.  Petitioners argue that Revenue Officer Cockerell improperly allocated the voluntary payment and that the payment should have been applied against their oldest tax liability first.  Respondent argues that petitioners never raised the payment allocation during their CDP hearing and that they are therefore barred from raising the issue before the Court.  We agree with respondent.

Generally, a taxpayer must raise an issue at a CDP hearing to preserve it for this Court's consideration.  Id. at 115; sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.  The merits are not properly raised if the taxpayer mentions an issue but fails to present Appeals with any evidence regarding that issue after being given a reasonable opportunity to do so.  See Delgado v. Commissioner, T.C. Memo. 2011-240; sec. 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

The record does not show that petitioners raised the issue that their voluntary payment had been improperly applied against their outstanding liabilities.  Petitioners did request, and they did receive, detailed transcripts showing how their payment was applied.  However, they never contested the

[*20] allocation.  Accordingly, we find that petitioners did not properly raise this issue during their CDP hearing, and therefore they cannot dispute the issue before the Court.[4]

III.   Proper CDP Hearing

Next we address whether petitioners received a proper CDP hearing. Petitioners argue that Settlement Officer Blue abused his discretion in denying a request for a face-to-face CDP hearing, and that in fact, they were never actually afforded a CDP hearing.  We disagree.

A CDP hearing is an informal proceeding, not a formal adjudication.  See Katz v. Commissioner, 115 T.C. 329, 337-338 (2000).  Although a CDP hearing may occur face-to-face, a proper hearing may also occur by telephone or by correspondence.  See id.; sec. 301.6330-1(d)(2), Q&A-D6, Proced. & Admin. Regs.  Once a taxpayer has been given a reasonable opportunity for a hearing but

---

[4] We also note that even if petitioners had raised the payment allocation as an issue during their CDP hearing, we would find that Settlement Officer Blue did not abuse his discretion because at the time petitioners tendered the voluntary payment they failed to provide specific written instructions as to how the payment was to be allocated.  See Rev. Proc. 2002-26, sec. 3.02, 2002-1 C.B. 746, 746 (stating that if at the time a taxpayer voluntarily tenders payment "the taxpayer does not provide specific written directions as to the application of payment, the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest"); see also Muntwyler v. United States, 703 F.2d 1030, 1032 (7th Cir. 1983); Estate of Baumgardner v. Commissioner, 85 T.C. 445, 459-460 (1985); Estate of Wilson v. Commissioner, T.C. Memo. 1999-221.

**[\*21]** does not avail himself of that opportunity, the Appeals officer may make a determination based on the administrative file. Calafati v. Commissioner, 127 T.C. 219, 223 (2006).

We have held that an Appeals officer's denial of a face-to-face hearing does not constitute an abuse of discretion when a taxpayer refuses to provide requested financial information. LaForge v. Commissioner, T.C. Memo. 2013-183, at \*12 (citing Moline v. Commissioner, T.C. Memo. 2009-110, aff'd, 363 F. App'x 675 (10th Cir. 2010), and Summers v. Commissioner, T.C. Memo. 2006-219). Furthermore, the regulations state that a face-to-face hearing will not be granted in cases where a taxpayer makes an offer-in-compromise but is not otherwise eligible for one. Sec. 301.6320-1(d)(2), Q&A-D8, Proced. & Admin. Regs. A taxpayer is not eligible for an offer-in-compromise when the taxpayer has not filed required returns or has not made estimated tax payments. See id.

Petitioners argue that they requested a face-to-face CDP hearing when Mr. Anderson faxed Settlement Office Blue, stating: "In the best interest of my clients and the IRS, these appeals would be handled more efficiently by transferring them to the Tampa, Florida IRS Appeals Office." Although one may infer from this statement that petitioners requested a face-to-face CDP hearing, this is by no means clear. However, even if we assume that petitioners did request a face-to-

[*22] face hearing, our overall review of the record shows that Settlement Officer Blue did not abuse his discretion in denying one.

Petitioners repeatedly failed to timely submit documents that Settlement Officer Blue requested. Furthermore, at the time petitioners made the alleged request for the face-to-face hearing, and for several months following the alleged request, petitioners were not in compliance with the estimated tax payment requirements that would have made them eligible for an offer-in-compromise. Accordingly, we find that Settlement Officer Blue did not abuse his discretion in denying a face-to-face hearing. See sec. 301.6320-1(d)(2), Q&A-D8, Proced. & Admin. Regs.; see also Boulware v. Commissioner, T.C. Memo. 2014-80 (finding that a taxpayer was not entitled to a face-to-face hearing when at the time the request was made the taxpayer was ineligible for a collection alternative), aff'd, 816 F.3d 133 (D.C. Cir. 2016). We also find that the seven-month correspondence and telephone hearing in this case constituted a proper CDP hearing. See sec. 301.6330-1(d)(2), Q&A A-D6 ("CDP hearings are much like Collection Appeal Program (CAP) hearings in that they are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting. A CDP hearing may, but is not required to, consist of a face-to-face meeting, one or more written or oral communications between an

[*23] Appeals officer or employee and the taxpayer or the taxpayer's representative, or some combination thereof.").

IV.    August 5 Letter

Next we address the August 5 letter, which forms the basis of two of petitioners' arguments. Petitioners first argue that Settlement Officer Blue's August 5 letter "erroneously constituted a final determination that the petitioners had the ability to 'full pay' their tax liability, thereby disqualifying him as an 'impartial officer' and from further participation in the case." In other words, petitioners contend that following the issuance of the August 5 letter, Settlement Officer Blue was no longer impartial and should have been replaced by another officer. We do not find this argument persuasive.

As stated earlier, Settlement Officer Blue issued the August 5 letter because Mr. Anderson had ceased responding to Settlement Officer Blue's phone calls. In the letter Settlement Officer Blue stated that his review of petitioners' records indicated that petitioners could fully pay their tax liabilities. Settlement Officer Blue ended the letter by scheduling a followup conference to discuss the case. He also provided an opportunity for petitioners to schedule a different conference date so long as they called him. The letter in no way amounted to a final determination.

[*24] The letter was effective in that Mr. Anderson immediately called Settlement Officer Blue. Settlement Officer Blue kept the case open and continued to review petitioners' offer-in-compromise and numerous document submissions for several more months. Consequently, we do not believe Settlement Officer Blue abused his discretion in issuing the August 5 letter. Furthermore, we do not believe that the letter amounted to a final determination that should have disqualified Settlement Officer Blue from further participation in petitioners' case. We believe the August 5 letter merely represents Settlement Officer Blue's reasonable effort to encourage petitioners' nonresponsive attorney to engage in the CDP hearing.

Petitioners additionally argue that the August 5 letter was improperly sent to their home address rather than to their law firm address and that they had previously made a formal request to have all correspondence sent to their law firm address. The administrative record is devoid of any indication of such a written or oral request. Furthermore, petitioners' last known address, as reflected on their most recently filed income tax return at the time the letter was issued, was their home address. See sec. 301.6212-2(a), Proced. & Admin. Regs. ("[A] taxpayer's last known address is the address that appears on the taxpayer's most recently filed and properly processed Federal tax return, unless the * * * [IRS] is given clear and concise notification of a different address."). Finally, even if Settlement Officer

[*25] Blue did err in sending the letter to the wrong address, the error was harmless. Petitioners reviewed the letter and had Mr. Anderson contact Settlement Officer Blue, and the CDP hearing continued for several more months.

## V.    Abuse of Discretion

Finally, petitioners argue that Settlement Officer Blue abused his discretion by not accepting their offer-in-compromise. Petitioners also argue that Settlement Officer Blue relied on incorrect financial information provided in older collection information statements and refused to "permit petitioners sufficient time to file the correct Form 433-A (OIC)". We disagree with both arguments.

At a CDP hearing a taxpayer is entitled to make offers of collection alternatives, including an offer-in-compromise. Sec. 6330(c)(2) and (3). This right, however, carries with it certain obligations on the taxpayer's part. As provided in the regulations, "[t]axpayers will be expected to provide all relevant information requested by * * * [the Appeals officer], including financial statements, for * * * [his] consideration of the facts and issues involved in the hearing." Sec. 301.6330-1(e)(1), Proced. & Admin. Regs.

Over the course of seven months petitioners submitted three different collection information statements (including a Form 433-A (OIC)). However, petitioners frequently failed to include supporting information and documents that

[*26] Settlement Officer Blue specifically requested.[5]  Furthermore, petitioners occasionally submitted irrelevant or incorrect financial information.  On at least one of the collection information statements, petitioner wife admitted to taking "wild guesses" at asset values.

Settlement Officer Blue considered all information petitioners provided in arriving at petitioners' reasonable collection potential.  Because petitioners' offer was less than the reasonable collection potential that Settlement Officer Blue calculated, the offer was unacceptable under the Commissioner's procedures for the submission of offers-in-compromise.  See Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517; see also Murphy v. Commissioner, 125 T.C. 301, 321, aff'd, 469 F.3d 27 (1st Cir. 2006).  Although petitioners argue Settlement Officer Blue should have granted additional time for them to provide more supporting documentation, we believe the amount of time they were provided was sufficient.

---

[5] Petitioners argue that they were unable to timely produce documents because Settlement Officer Blue did not grant them additional time.  Petitioners argue more time was necessary because of petitioner wife's medical procedure, trial dates, and other scheduled court proceedings on behalf of clients.  We do not find petitioners' argument persuasive.  All of these conflicting engagements were scheduled to occur in August.  The CDP hearing continued for several months after August, which shows that petitioners were granted sufficient additional time to produce the requested documents.

**[\*27]** We find that Settlement Officer Blue did not abuse his discretion, and we sustain the proposed collection actions.

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.