T.C. Memo. 2017-97

UNITED STATES TAX COURT

HENNESSEY MANOR NURSING HOME, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24594-14L.                    Filed May 31, 2017.

David J. Looby, for petitioner.

Ann Louise Darnold, for respondent.

MEMORANDUM OPINION

PARIS, Judge:  In this collection due process (CDP) case, petitioner seeks

review pursuant to section 6330(d)(1)[1] of the determination by the Internal

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect at all relevant times, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

**[\*2]** Revenue Service (IRS or respondent) to uphold a notice of intent to levy. Petitioner timely petitioned this Court with respect to the notice of determination, and petitioner and respondent have each filed motions for summary judgment under Rule 121. The questions for decision are whether IRS Settlement Officer Alcorte (SO Alcorte) abused her discretion in rejecting petitioner's proposed installment agreement and sustaining the collection action and whether she had prior involvement with respect to the unpaid tax. For the reasons explained below, the Court will grant respondent's motion for summary judgment and deny petitioner's.

## Background

The following facts are based on the parties' pleadings and motion papers, including the attached exhibits and affidavits.[2] See Rule 121(b). Petitioner operates a nursing home facility in a rural community of fewer than 3,000 residents. Its principal place of business was in Oklahoma at the time the petition was filed.

---

[2]Each party requests that certain of the other's affidavits and exhibits be stricken from the record because they were not part of the original administrative record. Although there exists conflicting authority as to whether the Court's review in CDP cases is limited to the administrative record, neither the U.S. Court of Appeals for the Tenth Circuit nor the U.S. Court of Appeals for the D.C. Circuit has specifically ruled on the issue. The Court denies both requests.

[*3]  Petitioner has a history of noncompliance with its Federal employment tax obligations dating back several years.[3]  Petitioner entered into previous installment agreements which the IRS revoked for petitioner's noncompliance with either the terms of the agreements or its Federal tax filing and payment obligations.  The case at issue relates to petitioner's outstanding tax liability from Form 941, Employer's Quarterly Federal Tax Return, for the period ending December 31, 2013.

Petitioner timely filed its Form 941 for the quarterly period ending December 31, 2013, but failed to pay its reported tax liability of $54,417.03 for that quarter.  On April 14, 2014, respondent assessed the tax reported on the return and began collection efforts.

On April 24, 2014, respondent issued to petitioner a Letter 1058, Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing.  In response petitioner timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, seeking to enter into a $6,000-per-month installment agreement for its unpaid employment tax liability.  This request stated

[3]Contained within respondent's administrative file for petitioner is an Integrated Collection System history transcript.  Petitioner disputes neither its authenticity nor the contents of the statements within.  The transcript notes indicate that respondent had previously levied on petitioner's assets.

**[*4]** that if respondent were permitted to levy, petitioner's difficulty with Medicare and Medicaid collections would render it unable to pay either the employment tax balance it owed or its current taxes. Petitioner's request, however, did not dispute the underlying employment tax liability; petitioner checked the collection alternative boxes for "Installment Agreement" and "I Cannot Pay Balance".

Respondent mailed petitioner a letter dated June 6, 2014, acknowledging receipt of petitioner's hearing request, and SO Alcorte subsequently mailed petitioner a letter scheduling a CDP hearing for August 19, 2014. SO Alcorte's letter advised petitioner that it did not qualify for consideration of an installment agreement because it was not in compliance with its employment tax deposit requirements for the taxable period ending June 30, 2014. The letter further advised petitioner that to qualify for a collection alternative it had to provide to SO Alcorte the following items no later than August 11, 2014: (1) a completed Form 433-B, Collection Information Statement for Businesses, and (2) evidence that it had made the required Federal employment tax deposits for the current taxable period. SO Alcorte informed petitioner that respondent could not consider collection alternatives without the information requested.

[*5] Petitioner submitted the requested Form 433-B on August 11, 2014, asserting that the proposed levy would result in "economic hardship" and, therefore, "this situation * * * mandate[s] the release of the proposed levy". The Form 433-B was signed by petitioner's president, Sam Jewell, and listed among petitioner's assets accounts receivable from Private Pay, Medicaid Oklahoma, Medicare, and Insurance CoPay--with a combined balance of $198,749.11--for the period April 30 through June 30, 2014.[4] The Form 433-B also listed petitioner's monthly income of $155,695.86 and monthly expenses of $141,629.83, reflecting a net monthly income of $14,066.03.

In preparation for the CDP hearing SO Alcorte noted in her case activity report that petitioner did not appear to qualify for an installment agreement because its assets were sufficient to pay the outstanding liability in full. She also noted that petitioner offered no explanation regarding its proposed monthly installment payments of only $6,000 while its net monthly revenue was $14,066. And she reviewed the administrative record.

The administrative record details previous installment agreements between respondent and petitioner. Each followed a similar pattern: petitioner failed to

---

[4]The record reflects that $89,715.33 of petitioner's total accounts receivable was owed by the Federal and State Government agencies referenced above.

[*6] remit to the IRS the requisite employment tax deposits; petitioner attempted to enter into installment agreements, several of which were granted; and for one reason or another, petitioner defaulted on those approved agreements.

On August 19, 2014, the parties held the scheduled CDP hearing. Petitioner's representative did not contest petitioner's underlying tax liability but instead reiterated that it would suffer economic hardship if the proposed collection action were sustained. SO Alcorte explained that she would not consider petitioner's economic hardship argument because the economic hardship exception under section 6343(a)(1)(D) is not available to corporations. She noted that because (1) petitioner's accounts receivable were sufficient to pay its outstanding liability in full, (2) petitioner's monthly income was sufficient to allow it to make a larger payment, (3) petitioner was not in compliance with its Federal employment tax deposit obligations, and (4) the economic hardship exception is not available to corporations, she would be sustaining the proposed collection action and closing the case.

SO Alcorte verified that the assessment was properly made and that all other requirements of applicable law and administrative procedure had been met. She thereupon closed the case and, on September 17, 2014, issued to petitioner a

**[\*7]** notice of determination sustaining the notice of intent to levy with respect to the Form 941 tax period ending December 31, 2013.

Discussion

I.      Summary Judgment and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). If a moving party properly makes and supports a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of such party's pleading" but must set forth specific facts, by affidavit or otherwise, showing that there is a genuine dispute for trial. Rule 121(d).

Upon due consideration of the parties' motions, supporting declarations, and responses thereto, the Court concludes that no material facts are in dispute and that judgment may be rendered for respondent as a matter of law.

Where the validity of the underlying tax liability is properly at issue in a collection case, the Court will review the matter on a de novo basis. Sego v.

**[\*8]** <u>Commissioner</u>, 114 T.C. 604, 610 (2000). Where, as here, there is no dispute concerning the underlying tax liability, the Court reviews the Commissioner's administrative determination to proceed with collection for abuse of discretion.[5] <u>Id.</u> Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>See</u> <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006).

II.     <u>Collection Due Process</u>

In deciding whether the SO abused her discretion in sustaining the proposed collection action, the Court considers whether she: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." <u>See</u> sec. 6330(c)(3).

---

[5]Regardless of whether petitioner could have contested its underlying liability at the CDP hearing, this Court may consider a challenge to such a liability only if the taxpayer properly raised it before the SO, <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 115 (2007), and again in its petition to this Court, <u>see</u> Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded."). Petitioner did not raise this issue with SO Alcorte or in its petition. The Court accordingly deems it conceded.

**[\*9]**   Review of the record reveals that SO Alcorte conducted a thorough review of petitioner's account, determined that the taxes had been properly assessed, and verified that other requirements of applicable law and administrative procedure were followed.

Petitioner's primary contention is that section 301.6343-1(b)(4)(i), Proced. & Admin. Regs. (defining economic hardship only with respect to individual taxpayers), is invalid and that SO Alcorte abused her discretion in failing to consider its request for relief under the economic hardship provision of section 6343(a)(1)(D). This contention is incorrect. This Court recently released its Opinion in Lindsay Manor Nursing Home, Inc. v. Commissioner (Lindsay Manor I), 148 T.C. __ (Mar. 23, 2017), finding that section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid and that the economic hardship relief provided by section 6343(a)(1)(D) is available only to individual taxpayers. And in a companion Memorandum Opinion, Lindsay Manor Nursing Home, Inc. v. Commissioner, T.C. Memo. 2017-50, the Court concluded that the SO did not abuse her discretion in failing to consider a request for economic hardship relief made by a corporate taxpayer. SO Alcorte did not abuse her discretion in declining this request either.

Petitioner argues alternatively that SO Alcorte abused her discretion in rejecting its installment agreement request and in failing to adequately consider its

[*10] "economic hardship" in the balancing analysis required by section

6330(c)(3).[6]  Finally, petitioner suggests that SO Alcorte was not impartial as

required by section 6330(b)(3).

A.    Petitioner's Installment Agreement Request

In its discretion, the IRS may accept an installment agreement if it

determines that doing so will facilitate full or partial collection of a tax liability.

See sec. 6159(a).  The IRS also has discretion to reject a proposed installment

agreement (subject to certain restrictions not applicable here).  See Thompson v.

Commissioner, 140 T.C. 173, 179 (2013); sec. 301.6159-1(a), (c)(1)(i), Proced. &

Admin. Regs.  Consequently, in reviewing this determination, the Court does not

substitute its judgment for that of Appeals and decide whether in its opinion

petitioner's installment agreement should have been accepted.  See Woodral v.

Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo.

2006-166, aff'd in part, 568 F.3d 710 (9th Cir. 2009).  Instead, the Court reviews

this determination for abuse of discretion.

---

[6]In Lindsay Manor I, this Court found that sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid; accordingly, the economic hardship exception applies only to individuals.  To the extent that petitioner's other arguments attempt to rehash this issue, they are summarily disregarded.  The Court will, however, address petitioner's economic position with respect to SO Alcorte's sec. 6330(c)(3)(C) balancing analysis.

**[*11]** Petitioner argues that it was an abuse of discretion for SO Alcorte to reject its proposed installment agreement. The record, however, demonstrates that SO Alcorte's rejection of petitioner's installment agreement was proper for either of her reasons: (1) the value of petitioner's assets exceeded the underlying liability and (2) petitioner was not in compliance with its Federal employment tax deposit obligations.[7]

       1.     <u>Petitioner's Assets</u>

SO Alcorte rejected petitioner's proposed installment agreement after determining that it could fully or partially satisfy its tax liability--$54,417.03--by liquidating or borrowing against its assets--$198,749.11 in accounts receivable alone. <u>See</u> Internal Revenue Manual (IRM) pt. 5.14.1.4(5) and (6) (June 1, 2010) ("Taxpayers do not qualify for installment agreements if balance due accounts can be fully or partially satisfied by liquidating assets[.]"); <u>see also</u> <u>Boulware v. Commissioner</u>, T.C. Memo. 2014-80 (finding that settlement officer's reliance on this IRM provision was not an abuse of discretion), <u>aff'd</u>, 816 F.3d 133 (D.C. Cir. 2016). And other than its argument for economic hardship relief, petitioner does

---

[7]The Court finds disingenuous petitioner's argument that SO Alcorte's notes in her case activity report constituted a predetermination. The notes indicate SO Alcorte's preparation for petitioner's CDP hearing and reflect a thorough review of the late-submitted Form 433-B and its attachments. This is not an abuse of discretion.

[*12] not suggest that any exception to the general rule applies. Petitioner had defaulted on several previous installment agreements, and the record does not show any abuse of discretion by SO Alcorte in rejecting this offer.

### 2.     Compliance With Federal Tax Obligations

In rejecting petitioner's proposed installment agreement, SO Alcorte also noted that petitioner was not in compliance with its current Federal employment tax deposit obligations. Established IRS policy requires taxpayers to be in compliance with current filing and estimated tax payment requirements to be eligible for collection alternatives. See Reed v. Commissioner, 141 T.C. 248, 256-257 (2013). Generally, current compliance with tax laws is a prerequisite to being eligible for collection alternatives. See Cox v. Commissioner, 126 T.C. 237, 257 (2006), rev'd on other grounds, 514 F.3d 1119 (10th Cir. 2008). And despite petitioner's contention, SO Alcorte was well within her discretion to require compliance with current tax obligations. See Giamelli v. Commissioner, 129 T.C. 107, 111-112 (2007); cf. Christopher Cross, Inc. v. United States, 461 F.3d 610, 613 (5th Cir. 2006) (finding no abuse of discretion when settlement officer rejected collection alternative because taxpayer was not in compliance with its tax payment obligations); Reed v. Commissioner, 141 T.C. at 257 (same).

**[*13]**  Petitioner argues that SO Alcorte abused her discretion because--even though it was not in compliance--she failed to consider that its inability to remain current with its Federal tax deposits was a result of its nonreceipt of Medicare and Medicaid funding from the Federal and State Governments.  For support, petitioner cites Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178 (2011).

In Alessio Azzari, Inc., a lender stopped lending money to the taxpayer after the Commissioner's settlement officer erroneously determined that the Commissioner did not need to subordinate his lien on the taxpayer's accounts to the lender's lien on the same accounts.  Id. at 181-183.  As a result, the taxpayer was unable to stay current with its employment tax deposits after being in compliance for six consecutive quarters.  Id. at 183.  The Commissioner denied the taxpayer's installment agreement request because the taxpayer was no longer in compliance.  Id. at 183-184.  The Court held that it was an abuse of discretion for the Commissioner to deny the taxpayer's request for an installment agreement on the basis of the taxpayer's failure to stay current on its tax deposits because the settlement officer's erroneous interpretation of law led to the lender's decision to stop lending money to the taxpayer, which led to the taxpayer's not being in compliance.  Id. at 194.

**[\*14]** Unlike the taxpayer in <u>Alessio Azzari, Inc.</u>, petitioner was indisputably not in compliance when it requested an installment agreement. And because section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., is valid, SO Alcorte's interpretation was not erroneous. See <u>Lindsay Manor I</u>. Accordingly, SO Alcorte did not abuse her discretion in rejecting petitioner's installment agreement request on the grounds that petitioner was not in compliance.

### B.     SO Alcorte's Balancing Analysis

Petitioner next argues that SO Alcorte either did not conduct the required statutory balancing test or did not explain her reason for concluding that its requirements were met. Petitioner suggests that it "proposed a viable collection alternative that it could afford to pay on a monthly basis while staying current on its federal tax deposit payments that was less intrusive than enforced levy action".

This Court also found in <u>Lindsay Manor I</u> that the section 6330(c)(3)(C) balancing test properly takes into account a taxpayer's specific economic realities and the consequences of a proposed collection action. On the basis of the Court's thorough analysis of the record in this case, the Court concludes that there is no material issue of fact regarding whether SO Alcorte properly balanced "the need for the efficient collection of taxes" with the legitimate concern of petitioner that "any collection action be no more intrusive than necessary." See sec. 6330(c)(3).

[*15] At the time petitioner requested this installment agreement, it had defaulted on previous installment agreements, several of which involved substantially similar monthly payments it then promised to pay. Although petitioner argued that a levy would render it unable to meet its payroll and patient obligations, the administrative record shows that when petitioner complained of being unable to meet its payroll and patient obligations because of a levy, it found the requisite funding after respondent refused to release the levy.

Petitioner's Form 433-B showed that its monthly income exceeded its monthly expenses. SO Alcorte noted petitioner's accounts receivable, which were together sufficient to pay the outstanding liabilities in full. These accounts included delayed payments from Medicare and Medicaid, but petitioner did not suggest that they would be unpaid.

Although petitioner complains of the possibility of being forced to close its doors to its patients and employees, the record indicates that petitioner expressed similar concerns with its earlier installment agreements and that those concerns did not prove true--petitioner displays resilience despite its habitual noncompliance with the internal revenue laws. On the basis of petitioner's consistent history of noncompliance and its continual ability to find and remit sufficient payment despite the balance sheet, this Court finds that SO Alcorte gave

**[\*16]** due weight to petitioner's specific circumstances. The Government's interest in efficiently collecting petitioner's liability simply tipped the scale the other way.

Furthermore, it is well established that rejecting a collection alternative because of noncompliance with estimated tax payment requirements does not violate the proper balancing requirement. See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004), aff'd, 412 F.3d 819 (7th Cir. 2005); Friedman v. Commissioner, T.C. Memo. 2015-196; Schwartz v. Commissioner, T.C. Memo. 2007-155. In preparation for the CDP hearing SO Alcorte discovered that petitioner was not in compliance with its current employment tax deposit obligations for the taxable period ending June 30, 2014, and that it did not provide proof of making its required September 30, 2014, deposit. Upon consideration of petitioner's financial position and its failure to remain in compliance with its employment tax requirements, SO Alcorte determined that there was no alternative to sustaining the notice of intent to levy; she explained her reasoning behind her decision in the notice of determination. Accordingly, the undisputed material facts establish that SO Alcorte did not abuse her discretion in conducting the section 6330(c)(3)(C) balancing test.

**[\*17]**  C.     <u>SO Alcorte's Impartiality</u>

Next, petitioner argues that SO Alcorte's review of the documents it provided before the CDP hearing violates its section 6330(b)(3) right to a CDP hearing by an officer who had no prior involvement with respect to the unpaid tax.

Section 6330(b)(3) requires a CDP hearing to be "conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax * * * before the first hearing".  Prior involvement exists only when (1) the taxpayer, the tax, and the tax period at issue in the CDP hearing also were at issue in the prior non-CDP matter and (2) the Appeals officer or employee actually participated in the prior matter.  Sec. 301.6330-1(d)(2), Q&A-D4, Proced. & Admin. Regs.

Petitioner does not argue that SO Alcorte had prior involvement in an earlier, non-CDP matter; rather, it argues that, because she had reviewed petitioner's documents before the CDP hearing, SO Alcorte was not impartial. Petitioner is incorrect.  The regulations clearly state that prior involvement means that an Appeals officer actually participated in an earlier, non-CDP matter.  <u>Id.</u> Because petitioner does not assert that SO Alcorte participated in a prior non-CDP matter, its argument must fail.

SO Alcorte verified that she had not had any prior involvement with respect to the specific tax periods at issue.  Because SO Alcorte did not participate in a

**[*18]** prior non-CDP matter concerning the same tax, taxpayer, and tax period at issue, she was an eligible Appeals officer to preside over the CDP hearing. Accordingly, the undisputed material facts establish that SO Alcorte did not abuse her discretion by reviewing the information petitioner provided before its CDP hearing.

III.    Conclusion

Finally, petitioner argues that the Court should remand this case for additional consideration. The Court is not convinced that a remand is necessary or would be productive. See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001); Kakeh v. Commissioner, T.C. Memo. 2015-103, at *13. The purpose of a remand is not to afford a "do over" for a taxpayer whose missteps during the CDP process resulted in its collection alternative's being rejected. See Kakeh v. Commissioner, at *13. It appears to the Court that petitioner is seeking a "do over" here.[8]

Finding no abuse of discretion in any respect, the Court will grant respondent's motion for summary judgment and deny petitioner's. The Court has considered all of the arguments made by the parties, and to the extent they are not

---

[8]Attached to petitioner's motion for summary judgment is an affidavit dated March 27, 2015, of Sam Jewell, president of Hennessey Manor Nursing Home, Inc., which states: "Hennessey is capable of paying $14,000 per month." The only installment amount considered at the CDP by SO Alcorte was the $6,000 reflected on petitioner's documentation provided at the hearing.

**[*19]** addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.