# United States Tax Court

T.C. Memo. 2023-67

JOSEPH WILLIAM KOVACH,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 12350-20L.                    Filed May 30, 2023.

————

Joseph William Kovach, pro se.

*Albert B. Brewster II*, for respondent.

## MEMORANDUM OPINION

LAUBER, *Judge*:  In this collection due process (CDP) case, petitioner seeks review pursuant to section 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold collection action for 2011–2015.  Respondent has moved for summary judgment under Rule 121, contending that petitioner was not entitled to challenge his underlying tax liabilities and that the settlement officer (SO) did not abuse her discretion.  We agree and accordingly will grant the Motion.

### Background

The following facts are derived from the parties' pleadings, Motion papers, and the Declarations and Exhibits attached thereto.  *See*

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*2] Rule 121(c). Petitioner, who operated a shipping business, resided in California when he timely petitioned this Court.

Petitioner did not file timely Federal income tax returns for 2011–2015. On June 20, 2016, he filed delinquent returns for 2011–2014; on December 27, 2016, he filed a second delinquent return for 2014; and on February 2, 2017, he filed a delinquent return for 2015. He did not pay the tax shown as due on these returns. The IRS assessed the tax liabilities shown as due, plus additions to tax and interest.

The IRS commenced an examination of the returns described above. On June 7, 2017 the IRS sent petitioner a notice of deficiency for 2011; on August 8, 2017, it sent him a notice of deficiency for 2012–2014; and on October 18, 2017, it sent him a notice of deficiency for 2015. These notices were sent by certified mail to petitioner at his last known address in Fontana, California (Fontana address). The Fontana address was petitioner's address of record with this Court as of the filing of the Petition, and it is the address that he has used at all relevant times in corresponding with the IRS.

Petitioner did not petition this Court in response to any of the three notices of deficiency listed above. Upon expiration of the 90-day period specified in section 6213(a) for the filing of a Tax Court petition, the IRS assessed the deficiencies, additions to tax, and accuracy-related penalties set forth in the notices. Petitioner did not pay his liabilities upon notice and demand for payment. As of March 2019, his outstanding liabilities for all open years exceeded $400,000.

On December 22, 2017, in an effort to collect petitioner's liabilities, the IRS filed a Federal tax lien for 2011, 2012, 2014, and 2015 and sent him a Letter 3172, Final Notice of Federal Tax Lien Filing and Your Right to a Hearing (lien notice). On April 13, 2018, the IRS filed a notice of Federal tax lien for 2013 and sent him a lien notice for that year. The IRS mailed both lien notices to his Fontana address. He did not timely request a CDP hearing with respect to the lien notices.

On February 25, 2019, the IRS issued petitioner a Letter 1058, Notice of Intent to Levy and Notice of Your Right to a Hearing (levy notice), for 2011–2015. On March 25, 2019, petitioner submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing, to which he attached a transmittal letter that showed the Fontana address as his return address. On the Form 12153 he checked the boxes for "Filed Notice of Federal Tax Lien" and "Proposed Levy."

**[\*3]**   As his reason for disagreeing with the collection actions, petitioner directed attention to an "attached request for redetermination of audit." The attachment stated his position that he "doesn't owe part of the taxes determined during the audit" of his 2011–2015 tax returns. He contended that the IRS examiner had "failed to review documentation of significant business expenses" and had "misclassif[ied]" certain expenses. Petitioner did not check the box on the Form 12153 marked "Collection Alternative," and there is no indication in his hearing request that he sought a collective alternative.

In July 2019 petitioner's case was assigned to an SO in the IRS Independent Office of Appeals (Appeals), then reassigned in October 2019 to a different Appeals officer (SO2). On November 1, 2019, SO2 reviewed petitioner's file and verified that all requirements of applicable law and administrative procedure had been satisfied. On January 10, 2020, SO2 mailed to petitioner's Fontana address a letter acknowledging his hearing request and scheduling a telephone conference for March 3, 2020.

In the letter SO2 explained that petitioner would be prohibited from challenging his underlying liabilities for 2011–2015 because he had received notices of deficiency for those years but failed to petition the Tax Court for redetermination of the deficiencies. *See* § 6330(c)(2)(B). SO2 also advised that, in order for her to consider a collection alternative, petitioner needed to provide a copy of a signed tax return for 2018, which IRS records showed that he had not filed, and IRS forms supplying information about his ability to pay. SO2 indicated that she could consider a collection alternative only with respect to the levy notice: Petitioner's hearing request was untimely as to the lien notices, having been submitted more than 11 months after the lien notices were mailed to him. *See* § 6320(a)(3)(B).

The telephone conference was rescheduled to March 6, 2020, and held on that date. SO2 reiterated that petitioner could not challenge his underlying liabilities because the IRS had sent him notices of deficiency that he had failed to dispute. Petitioner said that he had not received the notices of deficiency, but SO2 provided him with U.S. Postal Service (USPS) certified mail information showing that notices of deficiency for 2011–2015 had been mailed to his Fontana address.

Petitioner indicated that he desired audit reconsideration, stating that he would submit amended returns in conjunction with that

[*4] request.[2]  SO2 indicated that she would consider a request for audit reconsideration, so long as petitioner submitted amended returns by May 4, 2020.  When SO2 asked petitioner if he was interested in a collection alternative, he again said "no."

During the ensuing months petitioner failed to submit the promised amended returns, failed to submit a signed copy of a tax return for 2018, and failed to submit the IRS forms and financial information requisite for consideration of a collection alternative.  On August 3, 2020, SO2 confirmed that the IRS had received no amended returns; on August 10, 2020, she verified that petitioner had not filed a Federal income tax return for 2018 or for 2019.  She accordingly decided to close the case.  On September 15, 2020, the IRS mailed petitioner a notice of determination sustaining the levy.

Petitioner timely petitioned this Court, alleging that the IRS had failed to consider documents he submitted during the audit.  He requested that "this Court redetermine the tax deficiency . . . for the calendar year[s] [2011–2015]."  On September 10, 2021, the Court granted respondent's unopposed Motion for Remand to Appeals to determine whether the IRS had secured supervisory approval of the penalties determined against petitioner.  *See* § 6751(b)(1).

Petitioner's case on remand was again assigned to SO2.  On November 15, 2021, petitioner and SO2 spoke by phone.  He inquired again about his entitlement to challenge his underlying tax liabilities; SO2 reiterated that he could not, but agreed to fax him copies of the USPS certified mail lists (CMLs) indicating that notices of deficiency for 2011–2015 had been mailed to him at his Fontana address.  SO2 asked whether he would be seeking a collection alternative as part of the supplemental hearing and he replied "no."  On another phone call two days

---

[2] A grant of audit reconsideration is discretionary with the IRS and is conducted outside the CDP process; an SO's determination on this point is not subject to judicial review.  *See Daniel v. Commissioner*, T.C. Memo. 2009-28, 97 T.C.M. (CCH) 1120, 1121 (describing audit reconsideration as a proceeding "separate and apart from the instant CDP collection case"); *Jones v. Commissioner*, T.C. Memo. 2007-142 (holding that the IRS did not abuse its discretion by declining to wait for the results of audit reconsideration before sustaining collection action).  Petitioner appears to have requested audit reconsideration previously: In April 2018 an IRS revenue officer mailed him Form 12661, Disputed Issue Verification, and Publication 3598, What You Should Know About the Audit Reconsideration Process.  Petitioner did not supply the documentation that the revenue officer requested of him, and in October 2018 the revenue officer closed that prior audit reconsideration process.

[*5] later petitioner requested that the supplemental hearing be rescheduled to December 6, 2021, and SO2 granted that request.

Around this time petitioner sent SO2 two bankers boxes containing documents. On December 3 petitioner called SO2, explaining that these documents supported his challenge to his underlying liabilities. SO2 replied that his case had been remanded for the sole purpose of determining whether the IRS had complied with section 6751(b). When petitioner acknowledged that the documents had nothing to do with that, SO2 advised that she would delve no further into the boxes.

The supplemental conference was held on December 6, 2021. SO2 explained that she was in the process of ascertaining whether the IRS had secured proper supervisory approval for the penalties determined during the audit. On March 2, 2022, having found no evidence of supervisory approval, SO2 determined that the penalties should be abated for tax years 2011–2014 (no penalty had been asserted for 2015). On March 22, SO2 phoned petitioner, advising that the penalties had been abated and offering him another chance to request a collection alternative. On March 31 he confirmed that he would not be seeking a collection alternative but reiterated his intention to challenge his underlying liabilities in this Court.

On June 6, 2022, the IRS issued petitioner a supplemental notice of determination, noting that all penalties had been abated but sustaining the proposed levy. After the case was returned to this Court, respondent filed, on October 3, 2022, a Motion for Partial Summary Judgment, seeking summary judgment as to tax years 2011–2014. On December 21, 2022, respondent filed a Supplement to his Motion, seeking summary judgment as to tax year 2015. On March 16, 2023, petitioner filed a Response.

*Discussion*

A.    *Summary Judgment Standard*

Our decision in this case is most likely appealable to the U.S. Court of Appeals for the Ninth Circuit. *See* § 7482(b)(1)(G)(i), (2). That court has held that, where de novo review is not applicable, the scope of review in a CDP case is confined to the administrative record. *See Keller v. Commissioner*, 568 F.3d 710, 718 (9th Cir. 2009), *aff'g in part* T.C. Memo. 2006-166, *and aff'g in part, vacating in part* decisions in related cases. For the reasons discussed below, de novo review is not available in this case, and petitioner has offered no reason to believe that the

[*6] administrative record is incomplete. Accordingly, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Belair v. Commissioner*, 157 T.C. 10, 17 (2021) (quoting *Van Bemmelen v. Commissioner*, 155 T.C. 64, 79 (2020)).

B.    *Standard of Review*

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the taxpayer's underlying tax liability is properly at issue, we review the IRS's determination de novo. *Sego v. Commissioner*, 114 T.C. 604, 610 (2000); *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not properly in dispute, we review the IRS decision for abuse of discretion only. *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Goza*, 114 T.C. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

C.    *Underlying Liabilities*

During the CDP hearing and subsequently, petitioner expressed his desire to dispute the 2011–2015 tax liabilities that gave rise to the IRS collection actions. But a taxpayer may challenge his underlying liability at a CDP hearing only if he did not receive a statutory notice of deficiency for that liability or did not otherwise have an opportunity to dispute it. § 6330(c)(2)(B); *Sego*, 114 T.C. at 609. For purposes of determining whether a taxpayer can raise a liability challenge under section 6330(c)(2)(B), actual receipt of the statutory notice must be determined. *See Sego*, 114 T.C. at 610–11. A notice of deficiency is presumed to have been received by the taxpayer if it was properly mailed to him at his last known address. *See* § 6212(b)(1); *Hoyle v. Commissioner*, 131 T.C. 197, 200, 203–04 (2008), *supplemented by* 136 T.C. 463 (2011).

Petitioner does not dispute that the Fontana address was his "last known address" at the time the notices of deficiency were mailed. *See* § 6212(b)(1). He received the lien and levy notices at that address, requested a CDP hearing, and listed the Fontana address as his return address. He showed the Fontana address on his Petition to this Court,

**[\*7]** and he does not dispute respondent's assertion that the Fontana address was his last known address at all relevant times.

The administrative record of the CDP proceeding includes copies of the notices of deficiency for 2011–2014. The record also includes USPS CMLs showing that notices of deficiency for all five years were sent via certified mail to petitioner at his Fontana address. The CMLs are properly stamped by the USPS and contain no obvious omissions or irregularities. Generally, if the IRS produces a USPS CML showing that a notice of deficiency was timely sent to the taxpayer's last known address (as it has done here), we will presume that the notice was properly mailed. *See United States v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984); *Cataldo v. Commissioner*, 60 T.C. 522, 524 (1973), *aff'd per curiam*, 499 F.2d 550 (2d Cir. 1974). We find that notices of deficiency for 2011–2015 were timely mailed to petitioner's last known address.[3]

For these reasons, SO2 correctly determined that petitioner was not entitled during the CDP hearing to challenge his underlying tax liabilities for 2011–2015. Because petitioner's underlying liabilities are not properly at issue in this Court, we will review SO2's action for abuse of discretion only. *See* § 6330(c)(2)(B); *Goza*, 114 T.C. at 182.[4]

D.    *Abuse of Discretion*

In deciding whether an SO abused her discretion in sustaining collection action, we consider whether she: (1) properly verified that the requirements of applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) considered whether "any proposed collection action balances the need for the

---

[3] The administrative record reviewed by SO2 did not include a copy of the notice of deficiency for 2015. In this situation IRS procedures instruct an SO to review any available CML to determine whether there was proper mailing. *See Internal Revenue Manual* 8.22.5.4.2.1.1(9) (Aug. 31, 2020). Here SO2, as part of her verification that the IRS had met all requirements of law and administrative procedure, reviewed the CML showing that a notice of deficiency for 2015 had indeed been mailed to petitioner at his last known address. We find that SO2's verification was sufficient. (Respondent subsequently secured a copy of the notice of deficiency for 2015 and has attached it to his Supplement to the Motion for Partial Summary Judgment.)

[4] Ultimately petitioner seems to have come around to the view that he was ineligible to challenge his underlying liabilities at his CDP hearing, stating in his Response to the summary judgment motions that he "now understands . . . that the CDP hearing that gave rise to this Tax Court case was not the appropriate place to challenge the amount of [his] Federal income tax."

[*8] efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." *See* § 6330(c)(3). Our review of the record establishes that SO2 properly discharged all of her responsibilities under section 6330(c).

This case was remanded to Appeals to determine whether supervisory approval had been secured for the penalties determined in the notices of deficiency. *See* § 6751(b)(1) (requiring supervisory approval), § 6330(c)(3) (requiring SO to verify that all requirements of applicable law or administrative procedure have been met). On remand SO2 researched this issue, found no evidence of timely supervisory approval, and promptly abated the penalties.

SO2 reasonably concluded that petitioner did not qualify for a collection alternative. He proposed no such alternative and repeatedly indicated that he did not wish to pursue one. He declined to supply the financial information requisite for consideration of a collection alternative, and he did not come into compliance with his Federal tax obligations by filing tax returns for 2018 and 2019. Each of these omissions by itself was disqualifying. *See Boulware v. Commissioner*, T.C. Memo. 2014-80, 107 T.C.M. (CCH) 1419, 1424 (not in compliance with Federal tax obligations), *aff'd*, 816 F.3d 133 (D.C. Cir. 2016); *Gentile v. Commissioner*, T.C. Memo. 2013-175, 106 T.C.M. (CCH) 75, 77 (no alternative proposed), *aff'd*, 592 F. App'x 824 (11th Cir. 2014); *Coleman v. Commissioner*, T.C. Memo. 2010-51, 99 T.C.M. (CCH) 1213, 1215 (no financial information provided), *aff'd*, 420 F. App'x 663 (8th Cir. 2011).[5]

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent. We note that petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an offer-in-compromise or an installment agreement, supported by the requisite financial information.[6]

---

[5] During the CDP hearing SO2 expressed willingness to entertain a request for audit reconsideration and set a deadline for petitioner to submit amended returns as part of that process. Petitioner did not submit any documents by SO2's deadline or within the ensuing two months, and she did not abuse her discretion by closing the case when she did.

[6] SO2 determined that petitioner could not challenge the lien notices because he had submitted his CDP hearing request more than 11 months after the IRS mailed the lien notices to him. *See* § 6320(a)(3)(B) (requiring that CDP hearing be requested within 30 days). The Supreme Court recently held that at least one filing deadline

**[\*9]**  To reflect the foregoing,

*An appropriate order and decision will be entered.*

---

connected with a CDP proceeding is not jurisdictional. *Boechler, P.C. v. Commissioner*, 142 S. Ct. 1493, 1501 (2022) (holding that untimely filing of a petition in a CDP case is not a jurisdictional defect and may be subject to equitable tolling). If that decision were deemed relevant here and if SO2 were deemed to have erred in excluding the lien notices from the hearing, that error would be harmless. The lien notices concerned the same tax years (2011–2015) as the levy notices, and SO2 properly concluded that petitioner could not challenge his underlying liability for any of these years. Petitioner repeatedly stated that he had no interest in pursuing a collection alternative and (for the reasons discussed in the text) he was ineligible for one in any event. SO2 would thus have come to exactly the same conclusions if the lien notices had been before her.